Sullivan County *v.* Ruth & Co.

SULLIVAN  COUNTY  *v.*  RUTH  &  CO.

*(Knoxville.*   November   7,   1900.)

1. COUNTY BRIDGE.   *Power of commissioners.*

Bridge commissioners and their engineer, upon whom the County Court has imposed the duty of superintending the erection of a county bridge, in accordance with the terms of a written contract, with specifications, entered into between the county and the contractor, have no power under our statutes, either by direct act or indirectly by failure to object to defective execution of the work at the time, to waive.or permit deviation from the provisions or requirements of the contract.   Their sole power and duty is to see that the contract is faithfully executed.   *(Post, pp. 87–91.)*

Code construed: §§ 1730, 1731, 1732 (S.); §§ 1448. 1449, 1450 (M. & V.); §§ 1266, 1267, 1268 (T. & S.).

Cases cited: Hunter *v.* Campbell, 7 Cold., 55; Grant *v.* Lindsay, 11 Heis., 667; Railway *v.* Wilson, 89 Tenn., 602.

2. PROXIMATE CAUSE.   *What is.*

The flood, not defective construction, is the proximate cause of the destruction of a bridge, when it appears that the flood was of such extraordinary character that it would have swept away the bridge if no defect in its construction had existed, and that the bridge would have stood, notwithstanding the defect in its construction, but for the extraordinary character of the flood. *(Post, pp. 91–95.)*

3. BOND.   *Escrow.*

Sureties are not bound who sign a bond on condition, that is made to appear on the face of the bond, that another person shall sign with them as surety thereon, although the bond is, without their knowledge or consent, delivered to the obligee and accepted by him without the signature of such additional security.   *(Post. pp. 95, 96.)*

4. CONTRACT. *Construction of.*

   The term "limestone rock" is held synonymous with "solid rock" or "bed rock" when used in a contract with reference to the foundation of bridge piers, such being the manifest intention of the parties. (*Post, p. 93.*)

---

FROM SULLIVAN.

---

Appeal from Chancery Court of Sullivan County. JESSE L. ROGERS, Sp. Ch.

C. A. BROWN and CURTIN & HAYNES for Sullivan County.

KIRKPATRICK, WILLIAMS & BOWMAN for Ruth & Co.

WILKES, J. This is an action for damages for the breach of a contract made by the defendants with the county of Sullivan to erect a bridge across the Holston river at Bluff City. The Chancellor was of opinion the defendants had substantially complied with the contract and were not liable for damages, and dismissed complainant's bill.

There was an appeal by the county, and on a hearing before the Court of Chancery Appeals that Court modified the decree of the Chancellor and gave judgment for an item of $172, with interest from the filing of the bill in this cause, this being the cost of having the bridge piers grouted, which the defendants should have done

but failed to do, and with the further sum of $569, less the value of the stones for the fallen pier, which were used in rebuilding the same after it was thrown down, which item is specified as being two-thirds of the actual cost to complainant of rebuilding the pier, and the cause was remanded to the Chancery Court of Sullivan county for a reference to ascertain the facts and the value of the material, to be deducted from the $569, with directions that the county should recover the balance and interest from the filing of the bill. The costs of this appeal and of the Court below were equally divided between the complainants and the defendants. Both parties have appealed to this Court and assigned errors.

It appears that the County Court of Sullivan County appointed a committee, consisting of the Road Commissioner and two others, to have the bridge built, and empowered them to employ an engineer. The committee let the stone work to Ruth & Co., entering into a written contract with them, with specifications. The contracts were reported to the Court and by it approved. The contract and specifications required the contractors to do and perform the work as specified in it, and in conformity with the instructions which shall be given from time to time by the engineer in charge for the county, the work to be paid for when completed agreeably to the specifications and to the satisfaction of the engineer.

The Court of Chancery Appeals report that the specifications were not complied with in that the excavation for the foundation course of the middle pier was not carried down to solid or bed rock at the upper end of the pier by a depth of eight inches on one side, increasing to eighteen inches on the other and for several feet of the length of the foundation, the average being twelve or thirteen inches; that there were pockets or seams in the bed rock that had not been excavated, and as a consequence the pier was laid in a bed of sand and small water-worn stones and gravel; that no cement was used in building the foundation course of said pier, and none of the projecting stones had been removed to make a level surface for that course, but broken stones and sprawls had been used to level the same, and that no cement was used in the backing or body of the foundation. The Court further reports that these defects or failures to follow and observe the specifications were known to Lockhart, the engineer in charge of the work; that his attention was called to the defects in the foundation before any stones were laid thereon, and that he approved building upon it as it was, and approved the laying of the foundation piers as they were laid, and that he was with the committee frequently at the work and inspecting the same, and that the manner in which the piers were built must have been known to him and to

the committee; that after it was completed it was inspected by the committee and. approved, and on their report was by the county received and paid for in full. That Court further reports that while the work was not done in strict compliance with the specifications in the particulars mentioned, there was no fraud or concealment on the part of the contractors, but that the County Court had no knowledge of the defects and failure to carry out the specifications until after the pier was washed down, such as may be imputed to it from the knowledge of the engineer and committee of construction.

Upon the facts as thus stated the Court of Chancery Appeals was of opinion that the provisions of the Act of 1835, being Sections 1730, 1731, 1732 of Shannon's Code, fixing the rights and duties of the contractors, and that the Act of 1859--60 (Shannon, § 1738) did not apply exclusively, the latter relating to the repair of bridges, while the former related to the erection of new bridges. The Court was of opinion that under Sections 1730, 1732 the engineers and commissioners must have the contract executed strictly according to the specifications, and had no power to waive any of their requirements or deviate from their provisions, and hence the contractors could not be protected in their deviations from the specifications by the directions of the engineer and the acquiesence of the committee. We

are of opinion that Court is correct in its view of the statutes applicable in this case, to wit, Sections 1730, 1731, 1732 of Shannon's compilation being Section 3 of the Acts of 1835. The provisions of these statutes relate to proceedings to build bridges and causeways at the expense of the county, and are to be distinguished from Sections 1721 to 1729, which are Sections 1 and 2 of the same Act, which relate to private enterprizes of more or less public convenience. *Hunter* v. *Campbell County,* 7 Cold., 55; *Grant* v. *Lindsay,* 11 Heis., 667; *Railway Co.* v. *Wilson,* 5. Pick., 602.

It is not meant to hold that Section 1738, Shannon's compilation, is not also applicable, as the repair of bridges may very properly be held to embrace the erection of a new one on the site of an old one which has become defective, but the question remains whether under either Act the committee appointed to have the bridge erected can in any way deviate from the specifications laid down in the contract. It will be observed that the contract bound defendants to perform the work in accordance with the contract, and, also, in accordance with the instructions to be given from time to time by the engineer in charge. Evidently some duty was intended to be imposed on the engineer and committee in the execution of the contract and performance of the work. But we do not find that any discretion is

given them to alter or change the details which had been incorporated into the contract and made part of it. The language is that the contractor was to execute the contract under the instructions of the engineer and committee. This provision was for a twofold purpose. (1) If there was any question raised as to the requirements of the contract and how it was to be executed, the engineer and committee were to instruct the contractor; and (2) they were to see that the contract was executed according to the spcifications. But the language carries no warrant of power to the engineer and committee to change or alter the contract or to waive any of its requirements, and certainly not in any feature or to any extent that would lessen the stability or efficiency of the work.

The Court of Chancery Appeals reports that it is not true that the defective work was the prime, efficient and proximate cause of the destruction of the pier, and the destruction of the bridge placed on it, but that by reason of said defective work the pier was less able to withstand the impact of an unusual flood tide in the river, which bore down on it an unusual quantity of drift, and that if the work had been constructed in accordance with the terms of the contract, it would probably have not been able to resist the violence of the flood and the impact of heavy driftwood, timber, and the trunks of

trees which were thrown against it by the flood, and that the proximate cause of the destruction of said middle pier and the consequent destruction of the superstructure of the bridge, was the unusual and violent flood and the driving thereby of timber, driftwood and the trunk of a tree against the pier, but that the action of the water and driftwood were materially aided by the weakness of the pier, caused by its failure to come up to specifications.

The bridge was finished and accepted February 21, 1897, and was washed away and destroyed March 23, 1897. The freshet which destroyed the pier was one almost unprecedented, and as we construe the finding of the Court of Chancery Appeals, the bridge would not probably have withstood it, if it had been constructed according to contract, but it was not so strong and secure as it would have been if constructed according to contract. We are of opinion it was beyond the power and authority of the engineer and committee to waive any requirement of the contract which would make the bridge less secure than if built according to specifications, and that their authority only extended to superintending the construction according to contract, and they had no power to allow the stability of the structure to be lessened, and this was known to the contractors. It is probable that the Court might have delegated to the engineer and committee the de-

tails of the construction altogether, but it did not do so, but fixed certain details themselves, and incorporated them into a contract which was executed by the county and contractors and this could not be varied, altered, or waived to the prejudice of the county by the engineer and committee. We think the Court of Chancery Appeals was not in error in holding that the term "limestone rock," used in the contract, should be held to be synonymous with "solid rock," or bed rock. It was certainly not the spirit or intention of the parties that the foundation of the pier should rest upon loose rock, even though it might be limestone, and the clear intent was that it should be so solid as to render the foundation secure, and this requirement being vital to the efficiency of the bridge could not be waived by the engineer, and committee. The Court of Chancery Appeals find as a fact that it was a part of the contract that the piers were to be grouted, and this was not done as to the other piers until after the destruction of the middle pier, and then at a cost to the county of $172. Some criticism is made of the use of the term "grouting," and it is insisted that it was not required by the contract, but this criticism we think not well made, and the terms "grouting" and "being laid flush with mortar" may well be treated as the same. After all it was essential that the "filling in" should be held to its place by mortar

or grouting, and this was not done by the contractors, but was done by the county at a cost of $172, in order to preserve and strengthen the other piers, and this item, we think, is allowable, and there need be no reference to ascertain the amount.

The Court declined to charge the defendants with the cost of replacing the superstructure, and limited the recovery to the replacing of the pier which was washed away, and the grouting of those which remained, and this is made the basis of an assignment of error on the part of the county.

This damage the Court of Chancery Appeals treat as consequential, and arising out of two contributing causes, to wit, the weakness of the pier and the violence of the flood. The doctrine of contributing causes may be stated, generally, that where two or more causes concur, and it cannot be determined which contributed most largely, or whether without their concurrence the accident would have happened, a recovery cannot be had. *Marble v. Worcester,* 4 Gray, 395.

The wrongful act of the defendant must be the efficient cause of the injury, without which the injury would not have occurred, and the influence of the wrongful act should predominate over all other supervening causes. *Brown* v. *Wabash Railroad,* 20 Mo. Appeals, 222 (S. C., 5 L. R. A., 787).

If an intervening cause is sufficient of itself to cause the misfortune, the former cause must be considered too remote. *Seal* v. *Gulf Railroad Co.,* 65 Texas, 274 (S. C., 12 L. R. A., 283, and note).

So when an injury has been occasioned by one of two causes for only one of which defendant is responsible, the plaintiff must show that the damage was produced by that cause. *Searles* v. *Manhattan Railroad Co.,* 101 N. Y., 661 (S. C., 7 L. R. A., 131, note).

Under these rules the defendant should not be liable for the damage to the superstructure. But for the unprecedented flood this misfortune would not have occurred. But the defect in the pier would have existed if the flood had never come, and defendant would have been responsible even if it had not been swept away. Its destruction was simply the revealing of a state of affairs which would have made the defendant liable for the defects, even though no actual consequential injury had occurred.

The defendants, when they undertook the contract, were required to execute a bond for the sum of $4,000 to faithfully comply with it. The Court of Chancery Appeals finds that the bond was never, as a matter of fact and law, executed; that it was signed by two sureties and placed in the hands of one of the makers, Jenkins, to be signed by the other surety, Sells, but it was

never in fact signed by him, and was held in escrow by Jenkins for that purpose, the other sureties stipulating that they were to be bound only on condition the bond was also signed by Sells. While the bond was being thus held, and before it was signed by Sells, it was taken by Thomas, one of the committee, and carried before the County Court, and by it accepted in ignorance of the fact that it was incomplete and the signatures were to be binding only on condition. The fact that it was carried before and presented to the County Court was not known to the parties who had signed it. The bond on its face showed that it was to be signed by Sells, and a blank space was left for his signature, while his name was inserted in the body of the bond. Under the circumstances the bond never took effect, or had any force, and no recovery can be had as against the sureties upon it.

The result is that the decree of the Court of Chancery Appeals is affirmed.