ESTATE OF H. C. JESSEE, Richard C. Jessee and H. M. Bacon, Plaintiffs-Appellees,

v.

Archie WHITE d/b/a Archie White Construction Company, Defendant-Appellant.

Court of Appeals of Tennessee, Eastern Section.

Feb. 12, 1982.

Permission to Appeal Denied by Supreme Court June 1, 1982.

Jack M. Tallent, II, of Kennerly, Montgomery, Howard & Finley, Knoxville, for defendant-appellant.

John F. Dugger, of Bacon, Dugger, Jessee & Perkins, Morristown, for plaintiffs-appellees.

## OPINION

FRANKS, Judge.

Defendant contractor appeals an adverse judgment[1] of $9,805.92 for breach of a paving contract. Defendant, on appeal, insists the paving contract was not breached or, in the alternative, the measure of damages applied by the chancellor is improper.

The owners contracted with the defendant to construct a building and pave the surrounding parking lot in Morristown. In 1977, approximately five months after construction had been completed, the asphalt cover began cracking in the travelled areas of the parking lot. Subsequently, the owners repaired the damaged areas at a cost of $1,805.00 but the asphalt surface continued to deteriorate. Following two evidentiary hearings, the chancellor concluded defendant had breached its contract with the owners by failing to comply with the specifications required by the contract and awarded damages to cover the cost of repairing the parking area.

The contract called for a minimum base of not less than 4 inches and a surface course of 1½ inches. It further stated the specifications were minimum and "shall be upgraded as required to meet the recommendations of the Asphalt Association and State Highway Department for the area for automobile traffic. Parking except access to service entrance shall be designed for medium trucks."

■ Defendant subcontracted the paving work to Paveco, Incorporated, and its agent verbally instructed that a 4 inch aggregate base be laid and covered with 1½ inch asphalt surface. No effort was made to obtain the recommendations as to thicknesses from the State Highway Department and the local asphalt association and Paveco was not instructed to lay a prime coat as was specified in the specification. Defendant's failure to comply with the specifications was a material breach of contract. *Sullivan County v. Ruth & Co.*, 106 Tenn. 85, 59 S.W. 138 (1900); *Edenfield v. Woodlawn Manor, Inc.*, 62 Tenn.App. 280, 462 S.W.2d 237 (1970); *East Lake Lbr. Box Co. v. Simpson*, 5 Tenn.App. 51 (1927). *Cf. Perkins Oil Co. v. Eberhart*, 107 Tenn. 409, 64 S.W. 760 (1901); (a contractor could not recover for the value of additional bricks used in the construction of a building when the specifications in the construction contract limited the number of bricks to be used.)

Defendant's agent testified that he did not investigate the recommended thicknesses or direct the application of a prime coat as he relied on his subcontractor. The par-

---

1. Defendant has perfected an appeal in accordance with T.R.A.P., Rule 4; however, the judgment appealed from is not a final judgment within the meaning of T.R.A.P., Rule 3. We have waived the requirements of perfecting an interlocutory appeal in accordance with T.R.A.P., Rule 9 and consider the merits of the appeal.

ties' contract, however, makes the defendant responsible for all work performed by the subcontractors. Moreover, the subcontractor's agent testified he was not instructed to lay a prime coat and he warned the "minimum" would not be satisfactory for the parking area. Plaintiffs' experts testified the base and asphalt surface did not comply with the minimums called for in the specifications. Defendant argues that since these experts' investigation occurred some three years after the actual construction, their testimony was speculative and should not be considered. This argument goes to the weight to be accorded to the testimony and not to its admissibility. The evidence does not preponderate against the findings of the chancellor. T.R.A.P., Rule 13(d).

Defendant also challenges the measure of damages employed by the chancellor. The award is based on the testimony of a paving expert, which includes the cost for the previous repairs and patching the existing cracked areas of the parking lot and resurfacing the entire lot with 2 inches of asphalt. The witness was of the opinion the proposed repairs would sustain traffic on the lot and provide sufficient drainage.

Defendant asserts it should only be liable for the difference in the value of the work done and the value of the work contracted, and relies on the case of *Edenfield v. Woodlawn Manor, Inc., supra,* which states, citing 13 Am.Jur.2d, *Damages,* § 79, at 79–81, that:

As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in the value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained. On the other hand, the courts generally adhere to the view that if a builder or contractor has not fully performed the terms of the construction agreement, but to repair the defects or omissions would require substantial tearing down or rebuilding of the structure, the measure of damage is the difference in the value between the work if it had been performed in accordance with the contract and that which was actually done, or (as it is sometimes said) the difference between the value of the defective structure and that of the structure properly completed. *Id.,* 462 S.W.2d at 241.

In the instant case the modification set out by *Edenfield* is not applicable. The amount awarded by the chancellor contemplates repairing the cracked portions of the parking lot and resurfacing the entire area with a thicker asphalt so as to rectify the inadequate pavement originally applied. The measure suggested by defendant would force appellees and their tenant to utilize an inadequately paved parking lot and face the inconvenience of periodic future repairs. The experts testified that removal of the existing pavement and repaving the lot would cost substantially more than the award. Counsel for Archie White also contends the repair contemplated by the chancellor's award would afford appellees a parking lot of greater quality than that required by the specifications. This is not the case. The evidence established the minimums were inadequate to provide a paved lot meeting the specifications of the contract. The award is based upon contemplated repairs which would bring the paved area within substantial compliance with the specifications required under the contract.

The decree of the chancellor is affirmed and the costs incident to the appeal are assessed against appellants.

PARROTT, P. J., and GODDARD, J., concur.