# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE
_____

| | |
|---|---|
| JERRY T. BEECH<br>CONCRETE CONTRACTOR, INC.<br><br>    Appellant,<br><br>v.<br><br>**MARY HENDERSON,**<br><br>    Appellee. | )<br>)<br>)<br>)<br>)  Davidson No. 93-3316-1<br>)<br>)  C.A. No. 01A01-9507-CH-00308<br>)<br>)<br>)<br>) |

**FILED**

**June 7, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

## APPEAL FROM THE CHANCERY COURT, PART I
## THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

**Maclin P. Davis, Jr.**
Nashville, Tennessee
Attorney For Appellee


**Joseph K. Dughman**
**Bruce, Weathers, Corley, Dughman & Lyle**
Nashville, Tennessee
Attorney for Appellant

### AFFIRMED IN PART, REVERSED IN PART, AND REMANDED


OPINION FILED:


                               **WILLIAM H. WILLIAMS, SENIOR JUDGE**


**CONCUR:**

**HIGHERS, J.**

**FARMER, J.**


## PRELIMINARY STATEMENT

This case concerns the payment on a contract for installation of a concrete driveway. Jerry

1

T. Beech Concrete Contractor, Inc. (hereinafter, "Beech") filed suit against Mary Henderson (hereinafter, "Henderson") on a sworn account for nonpayment of the contract price for installing a concrete driveway and a box drain. Following a bench trial, the trial court found that Beech and Henderson had contracted to install a driveway and a box drain, but the trial court determined that Beech had installed the driveway in an unworkmanlike manner causing it to have defects. As a result, the trial court awarded Beech the contract price offset by the amount of property damage Henderson allegedly suffered. Beech appealed, and the appeal is properly before this Court. We affirm in part and reverse in part.

## ISSUES

Beech's issues are as follows:

> I. Whether the evidence preponderates against the Chancellor's finding that Beech installed the driveway in an unworkmanlike manner.
>
> II. Whether the evidence preponderates against the Chancellor's finding that Beech orally agreed to insure that rainwater would not accumulate on the driveway.
>
> III. Whether the Chancellor erred in failing to find that Beech and Henderson had entered into an oral contract providing for liquidated damages of $700.00 if repair of the footprints failed to satisfactorily cure the defect.
>
> IV. Whether the Chancellor erred in awarding damages based on Henderson's testimony regarding the diminution in the value of the property.
>
> V. The Chancellor should have awarded pre-judgment interest since the damages of $8,505.00 are certain.

Henderson's issues are as follows:

> VI. Whether Beech's complaint should be dismissed and the judgment awarded Beech in the amount of $2,005 should be set aside (a) because the false testimony of Beech's president constituted unclean hands on the part of Beech; (b) because Beech was a subcontractor by contract with Mrs. Armistead and is not entitled to a personal judgment against Mrs. Henderson; and (c) because the cost of repairing the defective driveway exceeded the contract price.
>
> VII. Whether the amount of the judgment should be reduced by $555, which was included in the judgment for the box drain and culvert because (a) there was no agreement to pay that amount for the box drain and culvert; (b) there was no evidence that the box drain and culvert were installed by Beech; and (c) it was established by undisputed evidence that Beech removed the culvert from Mrs.

2

Henderson's property.

## STATEMENT OF FACTS

Appellee Henderson resides in a home located at the intersection of Tyne and Lynwood Boulevards in Nashville, Tennessee. In the Spring of 1993, Henderson contracted with Tara Armistead (hereinafter, "Armistead") to design a driveway and a landscape plan for her property. One of the purposes of the driveway and landscape plan was to divert water away from the house. The water was flowing onto the property from Tyne and Lynwood Boulevards. After developing a landscaping plan, Armistead's office notified Clayton King (hereinafter, "King"), Beech's president, and asked him to provide an estimate for the driveway, box drain and culvert. After reviewing the blueprint plans provided by Armistead, Beech provided an estimate of $7,950.00 for installation of the driveway. Beech also submitted an estimate for a culvert to be installed at a cost of $340.00 and a box drain and grate to be installed at a cost of $430.00. Beech's estimate was submitted to Armistead who presented it to Henderson. Henderson agreed to the estimate, and Armistead contacted King and told him that Henderson wanted Beech to do the work.

Beech installed the driveway and box drain in July, 1993. During the course of the project, Henderson objected to some prints from a workman's shoe that had been made in the wet concrete along the driveway. Beech offered to repair the shoeprints, but Henderson wanted the entire section of concrete replaced or $1,000 deducted from the cost of the project. Eventually, Beech repaired the shoeprints and finished the project. Henderson found the repairs to the driveway to be unsightly and unsatisfactory. Further, Henderson found that the driveway did not drain properly. Instead, the driveway retained water in some sites causing pooling for up to one hour following a rainstorm. Because of the shoeprints and the drainage problems, Henderson refused to pay Beech for the work done to her property.

On November 10, 1993, Beech filed a complaint on sworn account against Henderson to recover $8,505.00 for the installation of the concrete driveway and the box drain. In her Answer, Henderson alleged that she never contracted with Beech for installation of a driveway and box drain, and that Beech had contracted with Armistead, not Henderson. Subsequently, Beech amended its complaint to pray for pre-judgment interest and to add Armistead as a defendant. Beech alleged that Armistead acted as an agent for Henderson in contracting with Beech for the installation of the driveway and that Henderson was, thus, liable for the payment.

A trial was held in this cause in the Chancery Court of Davidson County in December, 1994. Beech's claims against Tara Armistead were dismissed at the conclusion of the Plaintiff's proof. On January 11, 1995, the trial court entered a memorandum making its findings of fact and conclusions of law wherein the Chancellor found that there was a contract between Beech and Henderson to install a driveway for $7,950.00 and a culvert and box drain for an additional $555.00. The trial court further found that Beech installed the driveway in an unworkmanlike manner resulting in $6,500.00 in damages to Henderson's property. Therefore, the trial court awarded a judgment to Beech in the amount of $2,005.00, which is the contract price of $7,950.00 minus $6,500.00 in damages to Henderson's property, plus $555.00 for installation of the box drain. The trial court did not grant the claim for pre-judgment interest and the costs were split equally between the parties. An Order consistent with the opinion was entered on January 26, 1995. After timely filing a motion to alter or amend the judgment, which the trial court later denied, Beech timely filed a notice of appeal on April 12, 1995.

This Court is bound by Rule 13(d), T.R.A.P., upon our review of this record.

> "Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." In a *de novo* review, the parties are entitled to a reexamination of the whole matter of law and fact and this court should render the judgment warranted by the law and the evidence. Thornburg v. Chase, 606 S.W.2d 672 (Tenn. App. 1980); American Buildings Co. v. White, 640 S.W.2d 569 (Tenn. App. 1982); Tennessee Rules of Appellate Procedure, Rule 36. We note that no such presumption attaches to conclusions of law. See Adams v. Dean Roofing Co., 715 S.W.2d 341, 343 (Tenn. App. 1986).

Carter v. Krueger, 916 S.W.2d 932, 935 (Tenn. App. 1995).

**CREDIBILITY**

In order to properly consider the merits of this appeal, it is necessary for the Court first to dispose of some issues raised by the Appellee. The first issue raised by Appellee is that the judgment should be set aside and Beech's complaint should be dismissed because Beech had unclean hands. Specifically, Henderson maintains that Clayton King testified that the only prints made in the wet concrete were those of the toe of a shoe about three to three and one-half inches long. Henderson asserts that this testimony is contradicted by King's own answers to interrogatories, as

well as the testimony offered by numerous other witnesses who all testified that some of the prints were those of an entire shoe.

Henderson relies upon this Court's decision in Inman v. Inman, 14 T.A.M. 47-5 (Tenn. App. 1989), modified on other grounds and affirmed, Inman v. Inman, 811 S.W.2d 870 (Tenn. 1991), to support the proposition that the complaint of a perjurer should be dismissed and any judgment entered in his favor be reversed. Upon examination of the record in this appeal, it does not appear to the Court that there are inconsistencies between Clayton King's testimony and his answers to interrogatories. King testified that the prints were not full footprints, and his answer to the interrogatory stated that the prints were ". . . [T]hree partial footprints involving the front portion of the foot. . . ." There appears to be no inconsistency among King's statements to support a finding of perjury, and the trial court did not find that perjury had been committed. Accordingly, we decline to dismiss the cause on this issue.

## CONTRACT

*1. The evidence preponderates in favor of the trial court's finding that a contract existed between Beech and Henderson.*

The second of Appellee's issues to be addressed is whether a contract existed between Beech and Henderson. Henderson asserts that Tara Armistead was an independent contractor who solicited and accepted the bid from Beech. Henderson also claims that the only contract that existed was one between Armistead as the primary contractor and Beech as the subcontractor. Therefore, Henderson maintains that there was no privity of contract between Beech Contract and her, and that Beech is not entitled to a personal judgment against her.

The trial court expressly found that Armistead, as Henderson's agent, contracted with Beech to install a driveway. Thus, the trial court found that Beech and Henderson had, in fact, entered into a valid and enforceable contract. We will not disturb the trial court's determination as to this issue. Whether an agency has been created is to be determined by the relations of the parties as the relations in fact exist under their acts, regardless of whether the parties understand there to be an agency. Rich Printing Co. v. McKellar's Estate, 330 S.W.2d 361, 376 (Tenn. App. 1959); see also Smith v. Tennessee Coach Co., 194 S.W.2d 867, 869 (Tenn. 1946). There is sufficient evidence in the record to indicate that Henderson gave Armistead the authority to hire a contractor to perform

5

the project. Armistead asked Beech to bid on the job which it did upon the belief that Armistead was acting on Henderson's behalf as her agent. The driveway was constructed on Henderson's property and solely for her benefit. The record is devoid of any proof that Armistead was a primary or general contractor. Therefore, Beech was justified in relying upon Armistead's apparent authority as Henderson's agent, and Henderson is thus bound by Armistead's actions. V.L. Nicholson Co. v. Transcon Inv. and Fin. Ltd., Inc, 595 S.W.2d 474, 483 (Tenn. App. 1980).

*2. The evidence preponderates in favor of the trial court's finding that Beech is entitled to $7,950.00 for installation of the driveway.*

The trial court not only found there to be a valid contract between the parties to install a driveway, but also found that Beech had installed the driveway and was, therefore, entitled to the contract price of $7,950.00 for installation of the driveway. We find the evidence preponderates in favor of the trial court's decision holding that Beech is entitled to the contract price, and in light of the evidence presented at trial we agree and affirm on this issue. The issue of property damages arising from Beech's allegedly unworkmanlike manner in installing the driveway will be discussed below.

*3. The evidence preponderates against the trial court's finding that Beech is entitled to $555.00 for installation of the box drain and culvert.*

The trial court held that there was a separate agreement between Beech and Henderson for installation of a box drain and culvert. Beech's job estimate provided for installation of an 18 inch culvert for $340.00 and installation of a box drain and grate for $430.00. We affirm the trial court's determination as to the existence of such an agreement between Beech and Henderson. However, Henderson testified that the culvert, while brought to Henderson's property, ultimately was not installed and was, in fact, removed from the property. In its reply brief, Beech concedes that the culvert was removed. Contrary to Henderson's assertions in her brief, the box drain and grate were installed as found by the trial judge. A photograph of the box drain and grate was introduced into evidence.

The Beech invoice shows that it charged Henderson $430.00 for installation of the box drain and grate and that it charged Henderson $340.00 for installation of the culvert. The invoice reflects that Beech credited Henderson with only $215.00 for the non-installation of the culvert instead of the $340.00. This is a differential of $125.00. There is nothing to explain the differential. The record is silent. Beech maintains that the trial court properly awarded $555.00 for the box drain and

6

grate. We disagree. The evidence preponderates against the trial court's finding in this regard and is reversed and disallowed. The proper amount due Beech for installation of the box drain and grate is $430.00. The amount of $125.00 will be deducted from the judgment awarded to Beech of $8,505.00, reducing said judgment to the amount of $8,380.00.

In summary, we affirm the trial court's finding that there was a separate agreement between Beech and Henderson for installation of the box drain, grate and culvert, but reverse its finding that the culvert was installed.

We, therefore, affirm the amount of $430.00 for installation of the box drain and grate, but reverse the granting of the additional $125.00 by the trial court to Beech because the evidence preponderates against both of these matters.

## WORKMANSHIP

*1. The evidence supports the Chancellor's finding that Beech installed the driveway in an unworkmanlike manner.*

Examination of the testimony offered by Armistead, Henderson and Henderson's expert, Fred Stephenson, indicates that the driveway is defective because of the footprints and the improper drainage. The trial court's determination is supported by ample evidence in the form of photographs of the driveway taken at various times after completion of the project. The photographs clearly show where the repairs were made to remove the shoeprints, and the photographs also show the many sites where the driveway collects water due to improper drainage.

7

*2. The evidence supports the Chancellor's finding that Beech orally agreed to insure that the driveway would not collect water.*

Beech maintains that Henderson has had water drainage problems in her yard for some twenty-two years, and that Beech was not hired to correct these problems. Beech claims that it was simply hired to install a driveway and was not asked to insure that the water would flow across the driveway and not accumulate. Specifically, Clayton King testified that the elevations that Beech determined were only elevations for the concrete forms. However, the trial court found otherwise. Specifically, the trial court stated in its findings of fact and conclusions of law, ". . . Beech Concrete orally agreed to shoot the slope of the driveway to insure that rainwater would not accumulate. Beech Concrete failed to do so."

Armistead testified that one of Beech's duties was to insure that the water drains off the driveway, and she further testified that Clayton King, Beech's president, agreed that he would take care of the elevations and the drainage of the driveway. Furthermore, Sandis Cooper, a local brick mason who took part in the project, testified that it was a Beech employee who determined the elevations for the driveway and instructed Cooper as to the height to place the brick and underlying concrete pad. The evidence is undeniable that water collects on the driveway due to improper drainage.

The Court finds that the evidence preponderates in favor of the trial court's finding that Beech installed the driveway in an unworkmanlike manner and that Beech orally agreed to insure that water would not accumulate on the driveway. Accordingly, the Court will affirm the trial court's determination.

## DAMAGES

The trial court awarded Beech a judgment of $7,950.00 for installation of a driveway. The trial court offset that judgment by $6,500.00 because Beech installed the driveway in an unworkmanlike manner and because Henderson testified that she had suffered property damage in that amount.

On appeal, Beech maintains that the trial court erred in awarding damages based on Henderson's testimony regarding the diminution in value of her property. The proof that Henderson set forth to establish these damages was her own testimony. Henderson testified to the diminution in value of her property as follows:

Q: Mrs. Henderson, in your opinion, what is the reduction -- amount of the reduction in your value of your -- all of your property there. Your home, if you were going to sell it but didn't have to sell it to a buyer who wanted to buy it but didn't have to buy it. In your opinion, what is the difference or reduction in the market value between what it would be worth if the driveway did not have the sections that you complained about?

* * * *

A: Well, my opinion would be that the property is worth at least $6,500 less than if the driveway were as it should have been, a quality correct driveway.

Examination of the record on appeal indicates that while unrebutted, Henderson's opinion testimony was all that was offered regarding the amount of damages. On that basis alone, the Chancellor offset the $7,950.00 contract price by $6,500.00 and awarded Beech a judgment for installation of the driveway of $1,450.00.

Although an owner of real property is deemed to have special knowledge about his property to offer an opinion as to its value, the owner's opinion will be given little weight when founded upon pure speculation. Airline Const., Inc, v. Barr, 807 S.W.2d 247, 256 (Tenn. App. 1990). There must be some evidence, apart from mere ownership, that the estimate of diminution in value is a product of reasoned analysis of evidence in the record, rather than upon conjecture, speculation or unwarranted assumptions. Id. at 256; See also Snow Bank Enterprises, Inc. v. United States, 6 Cl. Ct. 476 (1984) (citing United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966)). To support an award of damages there must exist proof of "damages within a reasonable degree of certainty." Redbud Coop. Corp. v. Clayton, 700 S.W.2d 551, 561 (Tenn. App. 1985). Based upon the proof in the record we conclude that there was no reasonable or rational basis upon which the trial court could have awarded diminution in value damages of $6,500.00. The trial court should have given no weight to Henderson's valuation testimony. Without Henderson's testimony, there is no proof of diminution in value damages; therefore, there can be no award of such damages in this case. Inman v. Union Planters Nat'l. Bank, 634 S.W.2d 270, 272 (Tenn. App. 1982).

This Court has long held that the measure of damages for injury to real property is the difference between the reasonable market value of the premises immediately prior to and immediately after injury, but if the reasonable cost of repairing the injury is less than the depreciation in value, the cost of repair is the lawful measure of damages. Fuller v. Orkin Exterminating Co.,

Inc., 545 S.W.2d 103, 108 (Tenn. App. 1975). See also Williams v. Southern Ry., 396 S.W.2d 98, 101 (Tenn. 1965); Killian v. Campbell, 760 S.W.2d 218, 222 (Tenn. App. 1988). McKinnon v. Michaud, 260 S.W.2d 721, 727-28 (Tenn. App. 1953); Mink v. Majors, 279 S.W.2d 714, 716 (Tenn. App. 1953). Henderson did not prove the difference in value immediately before and immediately after construction. Thus, there was no proof as to the point in time when the property was allegedly damaged by $6,500.00. In Haynes v. Cumberland Builders, Inc., 546 S.W.2d 228 (Tenn. App. 1977), this Court held that evidence regarding the difference in value is to be made at a time certain. Specifically, this Court held that the party seeking damages has the burden of proving ". . . both values applied in the formula which measures his general damages, the actual value of the property at the time of the contract and the value of the property if it had been as it was represented to him." Id. at 233-34.

As noted, the record is lacking in proof as to the value of property immediately before and immediately after the driveway was constructed.

We hold that on the record in this case, Henderson's testimony as the property owner of the loss of value to the property is pure speculation, unsupported by even a modicum of substantive evidence and amounts to nothing more than mere conjecture. The evidence, or lack thereof, preponderates against the trial court's finding of $6,500.00 damages and is reversed as we are required to do under Rule 13(d), T.R.A.P.

Beech maintains that the trial court erred in failing to find that the parties, *i.e.*, Henderson and Beech, had entered into an oral contract providing for liquidated damages of $700.00 if repair of the footprints failed to satisfactorily cure the defect. We think this issue is moot in consideration of the disallowance by this Court of the damages awarded to Henderson by the trial judge. Nevertheless, we would simply point out that although Beech strenuously argued this issue before the trial court, the chancellor did not award the $700.00 to Henderson in its judgment. In short, by clear and logical implication, the trial court denied Beech's contention when it awarded Henderson $6,500.00 based solely on her testimony as to damages. This issue is denied for the reasons stated.

Henderson asserts that the judgment awarded to Beech should be set aside because, *inter alia*, the cost of repairing the defective driveway exceeded the contract price. In support of this contention, Henderson cites two cases, Estate of Jessee v. White, 633 S.W.2d 767 (Tenn. App. 1982) and Wilhite v. Brownsville Concrete Co., Inc., 798 S.W.2d 772 (Tenn. App. 1990). Examination

10

of these cases reveals that while persuasive, they are not controlling. Both cases involved instances in which the construction resulted in a product that was <u>totally inadequate</u> (emphasis ours) for the purpose intended, *i.e.*, a driveway in <u>Estate of Jessee</u> and a swimming pool in <u>Wilhite</u>. Such is not the case here. It would appear that the driveway is structurally sound and has been used by Henderson for its intended purpose for the last two and a half years. Accordingly, we find Appellee's argument meritless. Further, we have carefully examined the record in this cause and we find no evidence whatsoever of cost of repairs to the driveway to support Henderson's contention. This issue is denied.

**PRE-JUDGMENT INTEREST**

Beech is asking this Court to grant pre-judgment interest pursuant to T.C.A. § 47-14-123 (1979). Pre-judgment interest, as an equitable principle, has long been held by the law of Tennessee to be within the sound discretion of the trial court. <u>Fisher v. Klippstatter</u>, 689 S.W.2d 870, 871 (Tenn. App. 1985); <u>Otis v. Cambridge Mut. Fire Ins. Co.</u>, 850 S.W.2d 439, 446 (Tenn. 1992). The trial court refused Beech's prayer for pre-judgment interest and we will not say that it abused its discretion in doing so.

Judgment is awarded to Beech in the amount of $8,380.00 without pre-judgment interest. Costs are taxed against the Appellee Henderson for which let execution issue if necessary. This cause is remanded to the trial court for execution of the judgment of this Court.

_____
WILLIAM H. WILLIAMS, SENIOR JUDGE


CONCUR:


_____
ALAN E. HIGHERS, JUDGE


_____
DAVID R. FARMER, JUDGE

11