IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 4, 2004 Session

## GIBBS BROTHERS CONSTRUCTION, INC. v. BROOK HOLLOW GREEN, LLC, NATIONAL GRANGE MUTUAL INSURANCE COMPANY, CONTINENTAL DEVELOPMENT AND CONSTRUCTION, INC., NICHOLAS S. PSILLAS, AND MARSHALL COLLIER, INDIVIDUALLY AND D/B/A P&C CONTRACTORS

An Appeal from the Chancery Court for Williamson County
No. 27249      R. E. Lee Davies, Chancellor

No. M2003-01698-COA-R3-CV - Filed April 19, 2005

This case is about a construction lien. A real estate developer hired a contractor to perform paving work on new roads in a subdivision. After the work was completed, the contractor sent the developer an invoice for the work done, but the developer did not pay. Eventually, the developer paid a portion of the invoice. When no further payments were made, the contractor filed a lien on the developer's roadway. The contractor then sued the developer to enforce the lien. After the suit was filed, the developer asserted that the contractor's workmanship was poor and that, as a result, the pavement on the roadway was defective. The trial court found that the contractor had a valid lien and awarded a judgment against the developer and the developer's surety. The trial court also awarded the contractor prejudgment interest. The developer appeals, asserting that the road was public and not subject to lien, that the trial court made erroneous evidentiary rulings, that the trial court erred in finding that a variance from the listed measurements was permissible under the contract, that it should have been awarded a setoff against the contractor's judgment, and that the contractor should not have been awarded prejudgment interest. We affirm, finding that the contractor's lien was valid and enforceable, that the trial court did not err in its evidentiary rulings, that the developer failed to prove damages to setoff, and that the trial court did not abuse his discretion in the award of prejudgment interest.

### Rule 3 Appeal; Judgment of the Chancery Court is affirmed

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. and DAVID R. FARMER, J., joined.

David M. Smythe, Nashville, for the Plaintiff/Appellee Gibbs Brothers Construction, Inc.

R. Francene Kavin, Brentwood, for Defendant/Appellants Brook Hollow Green, LLC, National Grange Mutual Insurance Company, Continental Development, and Defendant Nicholas Psillas.

Defendant Marshall Collier, pro se.

**OPINION**

Plaintiff/Appellee Gibbs Brothers Construction, Inc. ("Gibbs") is a construction company located in Nashville, Tennessee. Defendant/Appellant Brook Hollow Green, LLC ("Brook Hollow") is a limited liability company in the business of developing real estate. Brook Hollow owned and developed the real property at issue in this case, located in the City of Fairview in Williamson County, Tennessee. The managing member of Brook Hollow is Defendant Continental Development & Construction, Inc. ("Continental"). Defendant Nicholas Psillas ("Psillas") is the president of Continental. Psillas is also a partner with Defendant Marshall Collier ("Collier") in a separate entity, Defendant P&C Contractors ("P&C").[1]

Brook Hollow planned to build a subdivision on the property. Toward that end, Brook Hollow hired Gibbs to put in roads for the subdivision. Constructing the roads was comprised of four phases: base stone work, asphalt binder work, concrete curb construction, and asphalt topcoat work. The contract between Gibbs and Brook Hollow specified that Gibbs would construct an 8-inch deep limestone base and a layer of asphalt binder 2 inches deep. The fourth step, an asphalt topcoat, was to be added after construction on the subdivision was complete. The contract stated that "[i]nvoices not paid when due are subject to late charges of 1.5% per month."

For roads such as those at issue in this case, the City of Fairview's specifications were a minimum of eight inches of crush rock, two inches of binder asphalt, and one and a half inches of topcoat. Plans for the subdivision were drawn up by an engineer with defendant Continental, and were approved by the City of Fairview. The plans indicated an eight-inch stone base and a two-inch asphalt binder, with the notation "+/-" with the measurement requirements. These plans were given to Gibbs for Gibbs' use in submitting a bid for the roadwork. The bid was submitted in August 1999 and was accepted by Brook Hollow in September 1999. The plans were referenced in the contract between Gibbs and Brook Hollow.

Defendant P&C was responsible for the utility and subgrade work, putting in the roadbed and the preparation for utilities such as sewers and water drainage. This work was necessary to prepare for the base stone and asphalt work by Gibbs. In October 1999, in a separate transaction, P&C hired Gibbs to finish the grading of the roadways. On October 30, 1999, Gibbs invoiced P&C $5,975.00 for this subgrade work. Collier forwarded this invoice to defendant Continental. It was not paid.

---

[1] Continental, Psillas, Collier and P&C were named as defendants in the litigation below, but the trial court ultimately dismissed Gibbs' claims against them, and that decision was not appealed.

Thereafter, Gibbs commenced work on the first three phases of laying the roadway, that is, the base stone work, the asphalt binder, and construction of the concrete curbs. These first three steps were completed in early November 1999. On November 11, 1999, Gibbs sent Continental an invoice for $107,649.30 for the work completed to that point. This invoice likewise was not paid.

Gibbs's bookkeeper at the time, James Potts, made a number of telephone calls to Continental in an attempt to collect the invoices. In May 2000, Gibbs received a $50,000.00 check from Brook Hollow. No further payments were received.

In June 2000, Gibbs filed a Notice of Lien for $63,624.30, which represented the balance from two unpaid invoices on the roadwork for the subdivision, minus the $50,000.00 partial payment.[2] The Notice of Lien named Brook Hollow as the owner of the property.

On July 31, 2000, Gibbs filed suit against Brook Hollow to enforce the lien and for money damages against Brook Hollow. In October 2000, Gibbs amended the complaint to add defendant National Grange Mutual Insurance Company, as surety for Brook Hollow. In its answer to Gibbs' first amended complaint, Brook Hollow denied liability and asserted as an affirmative defense that Gibbs' work was of poor quality. Brook Hollow asserted a claim for the cost of correcting or redoing Gibbs' work as a setoff against any damages for which it might be held liable.

In April 2001, Gibbs filed a motion to file a second amended complaint, adding as defendants Continental, P&C Contractors, and Psillas and Collier individually. This amendment was permitted by consent. In July 2001, Gibbs filed a motion to amend the complaint again. In the motion, Gibbs alleged that it had inadvertently failed to invoice Brook Hollow for work done on a model home at the site and sought to amend to include a claim for payment for this work, in the amount of $8,793.14. This amendment was likewise permitted by consent.

During the pendency of the litigation, the thickness of the base and the asphalt binder was tested by core drilling on the roadway, performed by Professional Services Industries, Inc. ("PSI"), an engineering and testing facility located in Nashville, Tennessee. PSI was hired by the City of Fairview. PSI submitted a report dated January 13, 2003.

In addition, Brook Hollow hired Dr. Louis Mishu, a geotechnical engineer, to test the paving work done by Gibbs. By letter dated May 22, 2002, Brook Hollow notified Gibbs that it intended to call Dr. Mishu as an expert witness at the trial, scheduled for June 3, 2002. Gibbs filed a motion *in limine* to exclude Dr. Mishu's expert testimony. The motion was granted on the basis that Brook Hollow failed to timely supplement its response to Gibbs' discovery request seeking the identity of all experts.

---

[2]The invoices and Notice of Lien did not include late charges. The trial court awarded prejudgment interest in lieu of late charges. The late charge issue was not raised on appeal.

The three-day bench trial was held on June 3, 2002, and March 13-14, 2003. At trial, Gibbs' representative, Kenneth Brown ("Brown"), testified that Gibbs did not receive notification of any perceived defects in its work until after Gibbs filed suit to enforce the lien against Brook Hollow. To address alleged defects in workmanship, Brown said, a one year implied warranty for labor and materials was customary for this type of construction work. Brown noted, however, that Brook Hollow's first mention of any defects in Gibbs' workmanship came well over a year after Gibbs completed the invoiced work.

As to the alleged defects in Gibbs' work, Brown testified that any failures in the paving work was caused by subgrade failure or abuse, not by Gibbs's workmanship. Brown stated that a plus or minus tolerance or variance was customary in the paving industry in this geographical area.

Collier testified on behalf of Brook Hollow. Collier noted that the City of Fairview's specifications required a minimum of eight inches of stone and two inches of binder. He stated that he was not familiar with a plus or minus tolerance level. However, he acknowledged that the plans on which Gibbs based its bid indicated a plus or minus variance in the thickness measurements. Collier also said that a quarter to a half an inch of tolerance would be acceptable on the asphalt binder and less than one inch of tolerance would be acceptable on the base stone.

Despite the grant of Gibbs' motion *in limine*, Dr. Mishu was permitted to testify on Brook Hollow's behalf on some issues. Mishu testified that he could not approximate the amount of the pavement that was bad at the time he tested Gibbs' paving work. Dr. Mishu alleged that the primary reason for problems with the pavement was that the paving material contained too many fine particles. Mishu stated that the secondary reason for the pavement problems was that the paving was not thick enough.

PSI's representative, Wayne Haranack ("Haranack"), testified on the results of PSI's testing of core samples of the pavement. Haranack found that the average of the core samples for the binder coat was 1.83 inches, or .17 inches short of the required two inches. Haranack testified that PSI also found that the average of stone base samples was 8.09 inches, or .09 more than required. PSI's report stated that, in general, the binder was performing adequately, with relatively isolated problem areas.

At the conclusion of the trial, the learned trial judge issued an oral ruling. The trial court found that Gibbs completed the work according to the contract between the parties. The trial court also found that Brook Hollow did not complain of any defects in the workmanship until after Gibbs filed a lien on the property for the amount owed. The trial judge noted that the experts disagreed about the extent of problems with the pavement, but accepted the testimony of PSI's representative, Haranack. The trial court found that Gibbs' paving work was within the tolerance levels accepted in custom and practice and within the provisions of the plans, which noted a "+/-" on the measurements.

The trial judge found that any needed repairs should have been addressed pursuant to applicable warranties, but noted that Brook Hollow could not reasonably ask Gibbs to make warranty repairs when Gibbs had not been paid for the work. The trial court found no evidence of a specific request that Gibbs make any repairs. Regardless, the trial court noted that no proof was submitted at trial of any amount needed to make such repairs. Consequently, the trial court held that it was impossible to determine any setoff amount or recoupment amount.

As a result of these findings, the trial court entered a judgment against Brook Hollow in favor of Gibbs for $72,417.44. Of that amount, $57,649.30 was awarded against National Grange Mutual on the surety bond. In addition, the trial court awarded prejudgment interest of 10 per cent per annum from December 11, 1999 to June 30, 2002. The claims against the remaining defendants were dismissed. From this order, Brook Hollow and National Grange Mutual appeal.

On appeal, Brook Hollow argues that the trial court erred in ruling that Gibbs had a valid lien. Brook Hollow further contends that the trial court erred in ruling that Gibbs was not obligated to honor an implied warranty and in finding that the roads constructed by Gibbs were private roads instead of public roads. Brook Hollow also asserts that the trial court erred in limiting Dr. Mishu's testimony, in finding that a variance in thickness was permissible under the contract, in finding that Gibbs' paving work was within acceptable tolerance levels, in refusing to permit Brook Hollow to setoff the cost of repairs to the roadway, and in the award of the prejudgment interest against Brook Hollow.

Our review of this case is governed by T.R.A.P. 13(d), which provides that review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the factual findings, unless the evidence preponderates otherwise. T.R.A.P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court is afforded discretion to determine the "admissibility, qualifications, relevancy and competency of expert testimony." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). The trial court's rulings in this regard will be upheld except upon a showing of an abuse of this discretion. *Id.* at 263-64. "Resolving the conflicting testimony of experts falls within the province of the trier of fact[,]" *Atkins v. State*, 2004 WL 787166, *5 (Tenn. Ct. App. Apr. 14, 2004) (citing *State v. Flake*, 88 S.W.3d 540 (Tenn. 2002)), "and where an expert witness's testimony is supported by the evidence and the trier of fact credits that testimony over others, there is no basis to reverse the court's findings." *Id.* (citing *Balsinger v. Town of Madisonville*, 435 S.W.2d 803 (Tenn. 1968)).

Brook Hollow first argues that Gibbs's lien was invalid because the roads constructed by Gibbs were public roads rather than private roadways, and thus are not subject to lien under Tennessee Code Annotated §§ 66-11-101 and 102. The relevant portion of Section 66-1-102 provides: "There shall be a lien upon any lot of ground or tract of land upon which . . . *improvements* [are] made, by special contract with the owner or the owner's agent, in favor of the contractor, mechanic, laborer." Section 66-11-101 (7) defines the term "improvement" as follows:

> *Improvement* means any building, structure, erection, alteration, demolition, excavation, or any part thereof, including . . . *private roadways*, on real property for its permanent benefit, whether there is existing at the time of such work, any building, structure or other improvements upon the real property.

Tenn. Code Ann. § 66-11-101(7) (2004). Thus, improvements regarding a roadway may be subject to lien, so long as the roadway is private.

Brook Hollow asserts that the roads in the subdivision were not private roadways because the City of Fairview gave plat approval to Brook Hollow before the roads were built, making them public roads. Tennessee statutes, however, are contrary to Brook Hollow's position. Tennessee Code Annotated § 13-3-405 states expressly that plat approval does not constitute public acceptance of the road. T.C.A. § 13-3-405 (1999). Moreover, in **Hackett v. Smith County**, 807 S.W.2d 695 (Tenn. Ct. App. 1990), this Court explained that a road becomes public after there has been an offer of dedication of the road and an acceptance of its dedication to public use. *Id*. at 699. Acceptance of a road to public use may be implied through ongoing public use. *Id*. Here, the facts are inconsistent with any acceptance of the roads to public use. It is undisputed that Brook Hollow remained the owner of the property on which the roads were located. Therefore, there could be no acceptance of the roads' dedication to public use. Moreover, at the time Gibbs filed the lien, the final layer of asphalt had not yet been put on the roads; therefore, there could be no implied acceptance of the roads to public use through ongoing public use. Consequently, the roadways on which Gibbs performed work remained "private roadways" within the meaning of Section 66-11-101(7), and the work performed by Gibbs would be deemed an "improvement" within the meaning of Section 66-11-102, and subject to lien on the land owned by Brook Hollow. Accordingly, the trial court is affirmed on this issue.

Brook Hollow asserts that the trial court erred in refusing to permit some of Dr. Mishu's testimony. Initially, the trial court refused to allow Dr. Mishu's testimony as an expert, because Brook Hollow failed to timely supplement its discovery responses to disclose Dr. Mishu as an expert who would testify on behalf of Brook Hollow at trial. During the trial, however, the trial court allowed Dr. Mishu to testify, primarily as a fact witness, but also as an expert on some topics. As noted above, the trial court is afforded wide discretion to determine the admissibility and competency of expert testimony, the decision of a trial court regarding an expert will be upheld unless it is shown to be an abuse of discretion. **Atkins v. State**, 2004 WL 787166, *5 (Tenn. Ct. App. Apr. 14, 2004). Further, Tennessee Rules of Civil Procedure provide specific discovery sanctions, which include preventing a party from introducing certain matters into evidence. Tenn. R. Civ. P. 37.02(B); **Kuehne & Nagel, Inc. v. Preston, Skahan & Smith Intern., Inc.**, 2002 WL 1389615, *4 (Tenn. Ct. App. June 27, 2002). To the extent that the trial court excluded Dr. Mishu's expert testimony, we find no error in this decision, and it is affirmed.

Brook Hollow also asserts that the trial court erred in finding that a variance from the listed measurements was acceptable under the contract between the parties. Brook Hollow relies on **Estate of Jessee v. White**, 633 S.W.2d 767 (Tenn. Ct. App. 1982) in support of its position

that a deviation from the contractual specifications constitutes a material breach of contract. *White*, however, does not stand for this proposition. In *White*, the defendant contractor was hired to pave a parking lot. *Id.* at 768. The contract called for a minimum base of no less than four inches, and required the contractor to upgrade the specifications as required to meet the recommendations of the Asphalt Association and the State Highway Department. *Id*. at 768. The contractor hired a subcontractor to do the paving work. *Id.* The subcontractor did not comply with minimum standards and made no effort to ascertain the recommendations of the Asphalt Association or the State Highway Department. *Id.* Under the contract, the contractor remained liable for the subcontractor's breach of the contractual duties. *Id.* at 769. Consequently, the contractor in *White* was held liable under the agreement. *Id*. In contrast, in this case, the trial court held that a variance was acceptable under the contract in light of the explicit provision in the plans, referenced in the contract, and in light of testimony regarding industry custom and practice.

In the case at bar, Brook Hollow's witness, Collier, testified that the original plans for the pavement allowed for a variance and that the plans were drawn up by an engineer hired for Continental. Collier acknowledged that these plans were approved by the City of Fairview, were referenced in the contract, and were given to Gibbs in order for Gibbs to rely on them in submitting a bid. Under these circumstances, we must affirm the trial court's decision on this issue.

Brook Hollow argues on appeal that the trial court erred in crediting Haranack's testimony over the testimony of Dr. Mishu on the amount of variance in the paving and the reason for any problems in the pavement. The appellate court accords great deference to the credibility determinations of the trial court, since the trial judge has the opportunity to observe the manner and demeanor of the witnesses while testifying. *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Brook Hollow notes that the trial court, in its oral ruling, erroneously described Haranack as having been selected by both Gibbs and Brook Hollow. We find this to be harmless error; the fact is simply that the trial court apparently credited Haranack's testimony over that of Dr. Mishu. We find no basis in the record for reversing this credibility determination.

Brook Hollow argues on appeal that it is entitled to recoupment—a setoff of the amount of necessary repairs from the judgment in favor of Gibbs. In its ruling, the trial court stated

> there does not appear to be any evidence of a specific request to make repairs articulated either in writing . . . or even orally by [Brook Hollow]. Instead, it appears that [Brook Hollow] latched on to these problems as a reason to not pay anything else. The Court finds that to be unacceptable. Likewise, there is no proof of any amount needed to make repairs. Therefore, it's impossible to determine setoff or recoupment in this case.

Brook Hollow asserts that it could not present proof of damages because the trial court refused to allow testimony from its expert witness, Dr. Mishu. As noted above, we find no abuse of discretion in the trial court's determination on the admissibility of Dr. Mishu as an expert witness. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). Brook Hollow does not point to any place in the record in which it made, or sought to make, an offer of proof of Dr. Mishu's testimony regarding damages. Moreover, after the trial court ruled on Gibbs' motion *in limine* regarding Dr. Mishu's testimony, Brook Hollow was on notice that his testimony would be limited. After the first day of trial, June 3, 2002, the remainder of the trial testimony was heard on March 13-14, 2003, and Brook Hollow nevertheless did not proffer evidence from which the trial court could determine an amount to award as recoupment to Brook Hollow. We find no error in the trial court's decision on this issue.

Finally, Brook Hollow argues that the trial court erred in awarding prejudgment interest. Brook Hollow asserts that the trial court was biased and awarded prejudgment interest to punish Brook Hollow, rather than to fully compensate Gibbs. Brook Hollow bases this argument on the trial judge's statement that "it appears that [Brook Hollow] latched onto these problems as a reason to not pay anything else."

In *Myint v. Allstate Ins. Co*., 970 S.W.2d 920, 927 (Tenn. 1998), the Tennessee Supreme Court noted that the purpose of prejudgment interest is to "fully compensate a plaintiff for the loss of use of funds to which he or she was *legally entitled*, not to penalize a defendant for wrongdoing." It held that an "award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion." *Id.* at 927 (citing *Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 944 (Tenn.1994)); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn.1992). The *Myint* court observed that, "in cases where the evidence supports the trial court's decision, no abuse of discretion is found." *Id.* at 927.

In the case at bar, it is undisputed that Brook Hollow did not send Gibbs any written communication regarding perceived defects in Gibbs' workmanship until Brook Hollow filed its answer to Gibbs' complaint to enforce its lien. Brook Hollow presented testimony from Psillas that he began observing failures in the paved roadways in December 1999, and that he mentioned these failures to Collier. In contrast, Gibbs presented testimony that, in the course of its efforts to collect the amount due from Brook Hollow before filing a lien, including discussions with Psillas, there were no assertions of defects in Gibbs' work. Gibbs' position was that it had no notice that Brook Hollow considered its workmanship defective until it received Brook Hollow's answer to the complaint. The statement by the trial judge to which Brook Hollow objects indicates that the trial court credited the testimony presented by Gibbs on this issue. Again, we accord great deference to the trial court's determinations of credibility. *Bowman*, 836 S.W.2d at 566. With appropriate deference to the trial court's credibility determination, there is ample evidence in the record to support the trial court's conclusion that Brook Hollow gave Gibbs no notice of perceived defects until after Gibbs filed suit to enforce its lien, and the resulting inference that Brook Hollow "latched onto" these defects as a reason not to pay Gibbs any more money for its work. Under these circumstances, we find no error by the

-8-

trial court in reaching this conclusion. Accordingly, we affirm the trial court's decision to award prejudgment interest to Gibbs.

The decision of the trial court is affirmed. Costs of this appeal are assessed against Defendant/Appellants, Brook Hollow Green, LLC, and National Grange Mutual Insurance Company, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE