LUCILLE G. EDENFIELD, Plaintiff-Appellee, v.
WOODLAWN MANOR, INC., Defendant-Appellant.
—462 S.W.2d 237.

Middle Section.   August 28, 1970.

Certiorari Denied by Supreme Court January 18, 1971.

John D. Whalley, Nashville, for plaintiff-appellee.

Alfred H. Knight, III, Nashville, for defendant-appellant.

PURYEAR, J.  This is a suit for damages for breach of contract wherein the plaintiff, Lucille G. Edenfield,

sued the defendant, Woodlawn Manor, Inc., for $25,000.00 damages.

In her declaration, plaintiff alleged that the defendant was engaged in developing a tract of land in Davidson County, Tennessee, by construction thereon of a condominium apartment building or complex; that plaintiff entered into a purchase agreement with defendant under terms of which the defendant agreed to sell and convey to her a certain apartment unit then under construction, which contract specified that the apartment would be completed in strict accordance with plans and specifications prepared by Street and Street, known as job No. 6302 and dated June 29, 1962, and all addendums thereto.

The declaration further alleges that the defendant did, in fact, undertake to complete the apartment unit specified in the contract and delivered to plaintiff a deed conveying said apartment to her, upon examination of which apartment she discovered that it did not conform to the plans and specifications of the contract.

To this declaration the defendant filed a plea to the effect that it did not owe plaintiff as alleged in her declaration and that it did not agree as set forth in said contract or breach any agreements as alleged by plaintiff. In said plea, the defendant further averred that plaintiff had agreed to limit any claims for damages to a maximum, amount of $2,500.00 and also averred, in substance, that plaintiff had waived any claim for damages by accepting the property, with knowledge of the alleged defects in construction.

The case was tried before the Circuit Judge and a jury, which trial resulted in a jury verdict in favor of plaintiff for $12,464.00 damages, for which amount the trial

Court rendered judgment in favor of plaintiff and against the defendant.

Thereafter, on November 12, 1969, the defendant filed the following motions:

(1) Motion for remittitur; (2) motion for judgment notwithstanding the verdict; (3) motion for new trial upon the ground that the verdict of the jury was contrary to the weight of the evidence.

After these three motions were filed, but before they were presented to the trial Court for argument, defendant filed another motion as follows:

"Comes the Defendant Woodlawn Manor, Inc., and moves the Court as follows:

1. To consider the motion previously filed by the Defendant, designated 'Motion For Judgment Notwithstanding The Verdict,' as a motion for new trial on the ground that there is no evidence to sustain the jury's verdict.

2. In the alternative, to strike the said motion in its entirety." (Tech.R. p. 19)

The trial Court held that the latter mentioned motion was surplusage and overruled the other motions, from which the defendant has prayed and perfected an appeal in error to this Court.

It is insisted here by the plaintiff that by simultaneously filing the aforesaid motions designated, one, two and three, the defendant has waived its right to rely upon its motions for new trial, including a motion for remittitur which is, in effect and substance, a motion for new trial upon the ground that the verdict is excessive.

However, it appears that the plaintiff is under the impression that the defendant's motion for judgment notwithstanding the verdict is a motion in arrest of judgment, but we do not agree with this insistence.

■ The simultaneous filing of a motion for judgment notwithstanding the verdict and motion for a new trial does not result in a waiver of the latter. Higgins and Crownover, Tennessee Procedure in Law Cases, Section 1600 (1937); Caruthers History of a Lawsuit, Seventh Edition, Section 391.

Although, several controverted issues were submitted to the Court and jury upon trial of the case, the only issue presented upon this appeal is whether or not the verdict is excessive.

Defendant has filed two assignments of error in which it is generally insisted that the item for damages of $11,099.00 is grossly excessive and the other item for damages of $1,365.00 should not have been awarded at all.

The evidence introduced upon trial of the case shows that plaintiff is the wife of Ray Edenfield, a licensed electrical engineer, who has been engaged in the electrical engineering and contracting business for approximately forty years.

When the contract for purchase of the apartment was first presented to plaintiff, her husband declined to accept it as written and therefore, the contract was rewritten so as to provide that the three bedroom apartment in the defendant's condominium was to be constructed and completed:

"* * * in strict accordance with plans and specifications by Street and Street known as Job No. 6302 and dated

June 29, 1964 and all addendums thereto. All electrical and mechanical systems shall be completed including but not limited to air conditioning and heating systems of sufficient capacity to properly heat and cool the complete unit." (Plaintiff's Exhibit No. 1)

This is the contract which was finally signed by plaintiff and defendant by the terms of which defendant agreed to sell and plaintiff agreed to purchase the apartment in question for the sum of $31,500.00.

The written specifications and engineering drawings prepared by Street and Street provided that all of the air ducts were to be covered with fiber glass insulation and said ducts were to be rectangular in shape.

The written drawings also show thereon certain figures designating the required air flow at each vent installed in the system, said air flow to be measured by cubic feet per minute.

The written specifications also made the following requirement for roofing:

"Built-up roofing and flashing to be 20 years bondable Philip Carey Manufacturing Company, Barrett, or equal. Furnish a letter stating that the owner shall be able to buy a bond if he elects to do so, including felt flashing endorsement." (Plaintiff's Exhibit No. 2)

Mr. Edenfield testified that the ducts were not installed or insulated according to requirements of the specifications, that round instead of rectangular ducts were used and these departures from the specifications were made without the consent of plaintiff.

Mr. Edenfield also testified that plaintiff was not furnished with a letter showing that the roof was bondable

and further testified that the air conditioning system would not properly cool the apartment and that the roof leaked.

Mr. Thomas Farrell, an air balance technician, testified that he conducted tests at each of the ducts in the cooling system and that none of them produced the amount of air flow required by the plans and specifications, these tests showing that some of the vents would only provide sixty or seventy per cent of the required air flow.

Mr. Jim Morris of Sumner Construction Company, testified that the reasonable cost of opening up the walls and kitchen cabinets in order for proper air conditioning ducts to be installed and restoration of such walls and cabinets after installation was $6,099.00.

Another witness, Mr. W. L. Swats, Jr., an engineer for R. D. Herbert and Sons, testified that the reasonable cost of installing air conditioning ducts to meet the specification would be $5,000.00. This estimate did not include the expense of opening up the walls and cabinets and restoring them after installation of new air conditioning ducts.

Therefore, there is competent evidence in the record to show that the reasonable cost of removing the unacceptable ducts and installing ducts to meet the specification requirements would be $11,099.00.

Defendant insists that this cost of removing the duct work installed by the defendant's contractor and installing duct work in compliance with the specifications involves unreasonable economic waste and the proper measure of damage is the difference between the value of the

apartment as it was constructed by defendant's contractor and its value as reconstructed in accordance with the specifications.

In support of this insistence defendant cites East Lake Lumber Co. v. Simpson (1927), 5 Tenn.App. 51. That case involved a suit for damages for defective construction of a store house, which had only a pecuniary value, and not a dwelling, which usually has some aesthetic. as well as pecuniary value.

On the other hand, plaintiff insists that the proper measure of damage is the cost of reconstructing the air conditioning system so as to meet the specifications and that the amount awarded by the jury does not involve any unreasonable economic loss.

No Tennessee decision on all fours with the case at bar has been cited by either of the parties but, by independent research, we find a statement in 13 Am.Jur.(2nd) which supports plaintiff's insistence as follows:

"The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent. What the equivalent is depends upon the circumstances of the case, among which is the consideration of whether the defect or omission is remediable without tearing down what has been done by the contractor and rebuilding.

As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in value between what ought to have been done in the performance of the contract

and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained. On the other hand, the courts generally adhere to the view that if a builder or contractor has not fully performed the terms of the construction agreement, but to repair the defects or omissions would require a substantial tearing down and rebuilding of the structure, the measure of damages is the difference in value between the work if it had been performed in accordance with the contract and that which was actually done, or (as it is sometimes said) the difference between the value of the defective structure and that of the structure if properly completed. Despite this latter rule, however, there is some authority to the effect that damages for a contractor's breach of a contract to construct a dwelling, where it is not constructed in accordance with the plans and specifications, *are* the amount required to reconstruct it to make it conform to such plans and specifications, rather than the difference in loan or market value on the finished dwelling, since unlike a commercial structure, a dwelling has an esthetic value and must be constructed as the owner wants it, even though the finished dwelling may be just as good.'' 13 Am.Jur.2nd. pp. 79, 80, 81 Section 79.

One of the cases cited in Am.Jur.2d is Fox v. Webb (1958), 268 Ala. 111, 105 So.2d 75, 67 A.L.R.2d 1007.

In that case the Supreme Court of Alabama said:

"In regard to the case at bar it may be observed further that a distinction exists between a contract to construct a dwelling for the owner who plans to live

therein and a contract to construct a commercial structure where the aesthetic taste of the owner is not so deeply involved. It seems to us that when the owner contracts to have a dwelling constructed he wants a particular structure, not just any structure that could be built for the same price. We, therefore, think that the trial court was correct in awarding damages equal to the amount required to reconstruct the dwelling so as to make it conform to the specifications, rather than adopting the difference in loan value on the dwelling as the measure of damages, as contended by appellant.'' Supra, 105 So.2d p. 82, 67 A.L.R.2d p. 1016.

We think the Alabama Supreme Court's reason for applying a different rule to defective construction of a dwelling and defective construction of a commercial building is a valid one and is applicable in the instant case. The uncontradicted evidence shows that the plaintiff and her husband intend to use the apartment in question as a dwelling for themselves. Unquestionably, consideration for comfort and convenience is one of major importance in a building constructed as a dwelling place for the owner.

Therefore, this is a much stronger case for application of the rule than the Alabama case of Fox v. Webb, supra, since, in addition to aesthetic tastes of the owner being involved here, there is also the matter of the owner's comfort and convenience.

If the defendant could satisfy the plaintiff's claim for damages here by merely paying the difference between the market value of the apartment as constructed by defendant's contractor and the market value thereof as constructed according to the specifications, then this

would, in effect, confine the owner to one of the following three alternatives:

(1) Sell the apartment for whatever she could get and find another dwelling place; (2) pay the cost of reconstructing the air conditioning system or (3) live in an apartment that is hot and uncomfortable in warm weather. Needless to say, none of these alternatives meet the requirements of substantial justice.

The question of whether the economic waste involved in the reconstructed air conditioning system is unreasonable or not was submitted to the jury in this case, the verdict of the jury has been approved by the trial Judge and there is competent evidence in the record to support it. Therefore, we are bound by the jury's verdict on this issue.

Mr. Edenfield also testified that the roof on the apartment leaked in several different places and, despite the defendant's attempt to repair the roof so as to prevent leakage, it continued to leak and to damage the interior of the apartment.

By reason of defendant's failure to furnish plaintiff with a letter which would make it possible for plaintiff to obtain a roofing bond, it was necessary for plaintiff to have the old roof removed and a new roof applied and there is competent evidence in the record to show the reasonable cost of installing or applying such a new roof was $1,365.00.

This evidence supports the jury's verdict, but the defendant insists that this amount should be reduced by the premium which the plaintiff would have been required to pay for a roofing bond or insurance policy. However, we think that if the defendant intended to claim a reduc-

tion of damages to the extent of cost of a roofing bond, it was defendant's duty to introduce evidence to show such cost or premium and having failed to do so, it cannot now be heard to complain about the cost of repair not having been so reduced.

So far as this record discloses the plaintiff may yet be required to pay a premium to obtain a roofing bond.

Defendant also insists that no award at all should have been made for breach of contract to apply "a bondable" roof because no specific averment of this alleged breach of contract was made in the declaration.

However, we find that in addition to allegation of departure from the specifications for the air conditioning system, there is a general allegation of other departures from specifications and the defendant made no motion to require more specific pleading by plaintiff. Therefore, any such lack of specific averment has been waived by the defendant, Caruthers History of a Lawsuit, Seventh Edition, Section 169.

For the reasons hereinabove set forth, the assignments of error are respectfully overruled and the judgment of the trial Court is affirmed. The defendant-appellant will pay all of the costs of this appeal.

Shriver, P. J. (M.S.), and Todd, J., concur.