IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

J. CRAIG REED, and                ) C/A NO. 03A01-9807-CH-00210

**FILED**

October 13, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

wife, KRISTI L. REED,             )
                                  )
        Plaintiffs-Appellees,)
                                  )
                                  )
                                  )
                                  )
v.                                )
                                  )
                                  )
                                  )
WALLY CONARD CONSTRUCTION,        ) APPEAL AS OF RIGHT FROM THE
INC., GREGORY D. SHANKS,          ) KNOX COUNTY CHANCERY COURT
d/b/a SHANKS & BLACKSTOCK,        )
and JIM NICELY, d/b/a JIM         )
NICELY CONSTRUCTION,              )
                                  )
        Defendants,               )
                                  )
and                               )
                                  )
                                  )
WEST KNOX PROPERTIES, INC.,       )
                                  ) HONORABLE FREDERICK D.
MCDONALD,       Defendant-Appellant. ) CHANCELLOR


For Appellant                     For Appellee

W.F. SHUMATE, JR.                 HENRY T. OGLE
Shumate & Bowling                 Knoxville, Tennessee
Knoxville, Tennessee

# OPINION

AFFIRMED AND REMANDED                                    Susano, J.

This is an action under the Tennessee Consumer Protection Act ("the Act") that arose out of the sale of a residence. Following a bench trial, the court below awarded compensatory damages, attorney's fees, and discretionary costs to the plaintiffs, J. Craig Reed and wife, Kristi L. Reed ("the Reeds") to remedy a violation of the Act, *i.e.,* a misrepresentation by the seller of the property as to whether the location of the residence violates a subdivision setback restriction. The seller of the residence, West Knox Properties, Inc. ("West Knox"), appeals, raising three issues:

> 1. Did the Chancellor properly determine that West Knox had violated plaintiffs' rights under the Act?
>
> 2. Did the Chancellor correctly determine the amount of compensatory damages to which the Reeds were entitled in order to cure the violation of the setback requirement?
>
> 3. Are the plaintiffs entitled to an award of $5,300 in attorney's fees and an award of $2,803.10 in discretionary costs?

The Reeds argue in their brief that this case should be remanded "for consideration of an additional award of attorney's fees incident to the defense of this appeal."

I.


In December, 1994, the Reeds purchased a newly-constructed house in the Crest Haven Subdivision of Knox County from defendant West Knox.  The purchase price was $138,350.  At the closing, West Knox gave the Reeds a warranty deed, which deed provides, in pertinent part, as follows:

> [West Knox] for itself and for its successors does hereby covenant with the [Reeds], their heirs and assigns that it is lawfully seized in fee simple of the premises above conveyed and has full power, authority and right to convey the same, *that said premises are free from all encumbrances except the county property taxes*, and that it will forever warrant and defend the said premises and the title thereto against the lawful claims of all persons whomsoever.

(Emphasis added).  The deed further provides that the conveyance is "made subject to all applicable restrictions, easements, and building set back lines of record...."  By virtue of this edict, the conveyance was made subject to a provision of the subdivision restrictions stating that no building could be located within five feet of any side lot line.


At the closing, the title agent instructed the Reeds to sign a survey plat that reflected the layout of the house on the property.  The survey plat shows that the house faces generally south; and that the side lot lines run generally

from south to north as one faces the property.  The front lot line is wider than the rear lot line.  Thus, the width of the property narrows from the front to the back.

A notation in cursive on the plat indicates that a building setback of five feet is required along the side lot lines.  Another such notation indicates that a five-foot utility and/or drainage easement exists inside the side lot lines.  The northeast corner of the house is shown on the plat as being very close to the eastern lot line.  This aspect of the survey was not mentioned at the closing, and neither of the Reeds interpreted the plat as reflecting a violation of the setback requirement.

When the Reeds inspected the property, they believed that the house was properly located on the lot.  Mr. Reed noted that the house seemed to blend with the rest of the subdivision in terms of the distance between their house and the neighboring houses.  When the Reeds inspected the property, the lot lines were not staked.  Thus, even though the northeast corner of the house is 1.9 feet from the eastern lot line, this fact was not readily apparent from an on-site inspection.[1]

The Reeds did not discover the encroachment until their neighbor advised them that he planned to erect a fence along the Reeds' eastern lot line.  In planning the fence, the

neighbor did a survey of the property and discovered that the Reeds' house intruded into the setback area. This was the first notice the Reeds had that the house violated a provision of the subdivision restrictions.

The Reeds brought suit against West Knox, alleging a violation of the Act and requesting treble damages.[2] Upon hearing the proof, the court awarded the Reeds a judgment in the amount of $3,600. Thereafter, the Reeds filed a motion to reopen the proof and to recover treble damages, attorney's fees, and discretionary costs. While denying the motion to reopen the proof and to award treble damages, the court granted an award of attorney's fees and discretionary costs.

West Knox filed a motion to reduce the judgment by $3,000, the amount that the defendant title attorney paid to settle the claim against him. In its memorandum opinion, the trial court held that West Knox was entitled to the requested reduction. In reviewing the amount of the judgment, the court also reconsidered its initial award of damages:

> This review has led to the conclusion that the amount of the damages awarded Plaintiffs at trial was erroneous. The award was based upon West Knox's contention that the error in the location of Plaintiffs' home on the lot could be remedied by taking a notch out of the corner of their house at a cost of $3,600.00. While notching out could correct the location problem, in ruling in favor of that solution virtually no

consideration was given to Plaintiffs' view of how the location problem should be resolved. The notching out and damages resulting therefrom would be proper for a commercial structure in which aesthetic considerations are of lesser, if any significant, import. However, in considering the amount and extent of damages to a home aesthetics are generally entitled to greater consideration. See: *Edenfield v. Woodlawn Manor, Inc.,* 462 S.W.2d 237, 240-242 (Tenn.App. 1970). Applying an essentially commercial standard to the allowance of damages in this case, rather than a residential standard, was error.

Plaintiffs sought to have the correction to their home be made by squaring off its entire end, and they objected to having a notch taken out of a corner of it. Plaintiffs' aesthetic sensibilities were accorded essentially no weight. Plaintiffs view that a squared off end on the house would be aesthetically more in keeping with the generally square type of home they contracted for and which they believed they had purchased, rather than a house with a notched out corner is understandable, and has merit. While Plaintiffs' desires do not totally control, their opinion of what would be the most acceptable solution to the problem, even though to a great extent based on aesthetic considerations, should

be accorded substantial weight. Considering all of the circumstances in evidence Plaintiffs are entitled to have a squared off end on their house as they were willing to accept, and as they sought.  While this is more expensive than the solution proposed by the defense, it is nonetheless far less expensive than would be moving the whole house, which would fully redress Plaintiffs' injury.

Accordingly, the court awarded the Reeds a total of $26,500 in damages plus $5,300 in attorney's fees and $2,018.10 in discretionary costs.[3]

## II.

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the preponderance of the evidence is otherwise.  Rule 13(d), T.R.A.P.; *Union Carbide Corp. V. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption.  *Campbell v. Florida Steel,* 919 S.W.2d 26, 35 (Tenn. 1996).

We also note that the trial court is in the best

position to assess the credibility of the witnesses; therefore, such determinations are entitled to great weight on appeal. *Massengale v. Massengale,* 915 S.W.2d 818, 819 (Tenn.App. 1995); *Bowman v. Bowman,* 836 S.W.2d 563, 566 (Tenn.App. 1991). In fact, this court has noted that

> on an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary.

*Tennessee Valley Kaolin Corp. v. Perry,* 526 S.W.2d 488, 490 (Tenn.App. 1974).

### III.

After reviewing the record with the foregoing principles in mind, we cannot say that the evidence preponderates against the trial court's finding that West Knox violated the Act. The Act states, in pertinent part, as follows:

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed...as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

T.C.A. § 47-18-109(a)(1) (1995). "The Tennessee Consumer Protection Act is to be liberally construed to protect consumers and others from those who engage in deceptive acts or practices." *Morris v. Mack's Used Cars,* 824 S.W.2d 538, 540 (Tenn. 1992). The Act is applicable to real estate transactions between consumers and sellers engaged in the business of selling real property. *See* *Ganzevoort v. Russell*, 949 S.W.2d 293, 297-98 (Tenn. 1997).

We have recognized that "an unfair or deceptive act need not be willful or knowingly made to recover actual damages under the Consumer Protection Act." *Smith v. Scott Lewis Chevrolet, Inc.,* 843 S.W.2d 9, 12 (Tenn.App. 1992)(holding that negligent conduct constitutes a deceptive act or practice under the Act).

In its deed, West Knox represented that the property was "free from all encumbrances except the county property taxes." By making this statement, West Knox represented that the property had no encumbrances other than property taxes when in fact this was not the case. The northeast corner of the house lies within the five-foot setback area in violation of the subdivision restrictions. This violation of a restrictive covenant is an encumbrance on the title of the property. *See* *Staley v. Stephens,* 404 N.E.2d 633, 636 (Ind.App. 1980)(finding setback violation created cloud on

title because buyers exposed to possible litigation from other homeowners). Thus, West Knox's statement in the warranty deed that no encumbrances existed other than property taxes was a misrepresentation.

Although the evidence does not suggest that West Knox knowingly made the subject misrepresentation, the evidence does preponderate that West Knox made this representation negligently. West Knox was acting in the course of its business of selling houses when it represented to the Reeds that the property was free from encumbrances except property taxes. Furthermore, the evidence preponderates that West Knox failed to exercise reasonable care in making this representation. According to Wally Conard, president of West Knox, the encroachment occurred when the bulldozer operator began excavating from the wrong surveying pin. Mr. Conard testified that he did not discover the encroachment until six months after the Reeds purchased the house. However, the eye of a trained professional such as Mr. Conard should have recognized from a cursory examination of the survey that the house encroached into the setback area. We find and hold that Mr. Conard was negligent in failing to discern the violation of the sideline setback requirement and in making a representation in the deed to the effect that no such violation existed.

When questioned at trial about the survey, Mr. Reed

explained why neither he nor his wife noticed what is arguably

an indication on the survey that the northeast corner of the

house is one foot away from the eastern side line:

> Q:   Can you explain how you didn't see
> that?  It's fairly clear on here it
> appears to me.
>
> A:   It is if you are looking for it.
>
> Q:   Well, did you take any time to examine
> the survey?
>
> A:   I did not try to rectify the survey
> with the other statements on the survey.
> I recognize it as my property.  It says
> right here the building setbacks are five
> feet, [sic] must comply with building
> setbacks.  Couldn't have conflicting
> information on a survey.

It is our judgment that the evidence supports a finding that

West Knox made a negligent misrepresentation which violated

the Act.

## IV.

### A.

Although the parties do not dispute the existence of

a setback violation as the house now stands, the parties do

dispute the effect of the violation on the property and how to

remedy the problems created by it.

The evidence presented at trial preponderates that

the setback violation adversely affects the marketability of the house. The plaintiffs' expert, attorney Stanley Roden, testified that the title is not marketable because of the violation. Dwight Sharp, vice-president of the bank that financed the Reeds' purchase, admitted on cross-examination that the violation "would have some bearing on" selling the property.

Although the violation is not visually apparent in the property's current state, the violation would become very obvious if, as the Reeds' neighbor proposes, a fence was erected along the property line. With a fence along or near the property line, it would be obvious that the Reeds' house is too close to the line. Furthermore, Mr. Reed testified that one cannot move from the front of the property to the rear without trespassing on his neighbor's property. Thus, it is apparent from the evidence that the violation affects the aesthetic value and marketability of the Reeds' house.

West Knox argues that any effect on the house's marketability could be resolved by amending the subdivision restrictions to require setback lines in compliance with the Knox County zoning requirements. Although the county's zoning ordinance also requires a minimum setback line of five feet, that ordinance -- unlike the subdivision restrictions -- does not prohibit a patio within the setback area. Thus, if, as West Knox proposes, the corner of the house is removed and a patio created from the exposed concrete slab, the Reeds' house

would no longer be in violation of any setback requirement.

We do not find West Knox's proposed remedy to be a feasible one.  Although a variance or an amendment to the subdivision restrictions might technically resolve the violation, such actions would not alleviate the aesthetic problems which ultimately affect the house's marketability.  Furthermore, the Reeds would end up with a house which is irregularly shaped instead of the rectangular house they purchased.  The "lopping off" of the offending corner may remedy the setback violation but it would leave a house that is unappealing to its owners and most likely undesirable to prospective purchasers.

We recognize that, in some cases, a violation of a setback restriction may be so minor as to warrant an award of only nominal damages.  For example, in *Womack v. Ward,* 186 S.W.2d 619 (Tenn.App. 1944), a restrictive covenant prohibited any building from being nearer than four feet to a common driveway shared by the plaintiff and the defendant.  The defendant's house encroached eight inches into the setback area, and the plaintiff brought an action for violation of the restrictive covenant.  We held that

> [t]he record does not contain the
> slightest evidence that such encroachment
> has depressed either rental or sales value
> of this property.  In short we have a
> technical breach of the quoted agreement
> but of such insignificant nature as to be

> unnoticed for a year the house was under
> construction.

*Id.* at 620.  Because no actual damages were shown, we awarded only nominal damages to the plaintiff.  *Id.*

However, cases such as *Womack* are distinguishable from the instant case.  First, the evidence before us preponderates that the violation has an adverse effect on the marketability, or sales value, of the Reeds' house.  Second, the setback violation in the instant case was more than a mere technical violation; the violation resulted in the Reeds purchasing a house that was different from that which was represented to them.  The Reeds received a house which does not conform with the subdivision's restrictive covenants, thus possibly subjecting them to litigation in the future.  *See Benton v. Bush,* 644 S.W.2d 690, 692 (Tenn.App. 1982)(" Restrictions to protect the beauty of the neighborhood, value of the property, and uniformity are covenants...enforceable by the owner of any of the lots so protected by the restrictive covenants.")  This is not a case for nominal damages.  The Reeds have sustained real damages as a result of West Knox's violation of the Act.

We now turn to the issue of the measure of damages. Marvin House, an engineering consultant, testified as an expert witness for the Reeds. In his opinion, removing only the offending corner would disturb the aesthetic value of the house. Thus, he concluded, the most practical solution would be to sever the eastern end of the building, including the driveway, by approximately four feet. Mr. House testified that this approach would bring the house within the setback requirement and would avoid an irregularly-shaped structure. He estimated that the cost to do the needed modification would be in the range of $29,500 to $31,500.

West Knox presented the testimony of James Nicely, the builder of the Reeds' house. He proposed remedying the setback violation by removing 31 square feet of the laundry room and creating an uncovered patio from the exposed concrete slab. Mr. Nicely estimated that the cost of removing the corner of the house and leaving an uncovered patio would be $2,347.16.

We think that the proper measure of damages must take into account the effect that the setback violation has on the house's aesthetic value. *See* ***Edenfield v. Woodlawn Manor, Inc.,*** 462 S.W.2d 237, 240 (Tenn.App. 1970). In ***Edenfield,*** the purchaser of a condominium sued the developer because the

installation of air conditioning ducts did not comply with the contract specifications.  In awarding the plaintiff the full cost of replacing the air conditioning ducts, we referred to 13 Am.Jur.2d *Building and Construction Contracts* § 79 (1964):

> The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent.
>
>     *    *    *
>
> As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained.  On the other hand, the courts generally adhere to the view that if a builder or contractor has not fully performed the terms of the construction agreement, but to repair the defects or omissions would require a substantial tearing down and rebuilding of the structure, the measure of damages is the difference in value between the work if it had been performed in accordance with the contract and that which was actually done, or (as it is sometimes said) the difference between the value of the defective structure and that of the structure if properly completed.  Despite this latter rule, however, there is some authority to the effect that damages for a contractor's breach of a contract to construct a dwelling, where it is not constructed in accordance with the plans and specifications, *are* the amount required to reconstruct it to make it conform to such plans and specifications,

> rather than the difference in loan or market value on the finished dwelling, since unlike a commercial structure, a dwelling has an esthetic value and must be constructed as the owner wants it, even though the finished dwelling may be just as good.

*Edenfield,* 462 S.W.2d at 241 (citing 13 Am.Jur.2d *Building and Construction Contracts* § 79 (1964)). We find the rationale of *Edenfield* to be persuasive here. We therefore affirm the trial court's award of damages based upon the cost of correcting the setback violation.

## V.

### A.

The Act provides that a court may award attorney's fees upon finding a violation of its terms. T.C.A. § 47-18-109(e)(1) (1995). We review the award of attorney's fees under an abuse of discretion standard. *See Haverlah v. Memphis Aviation, Inc.,* 674 S.W.2d 297, 306 (Tenn.App. 1984). In the instant case, we find no abuse of discretion in the trial court's threshold decision to award attorney's fees.

West Knox challenges the amount of fees awarded in this case. Specifically, West Knox argues that documentation of an attorney's time spent on a case is a "traditional requirement" of recovering such fees.

"While it is preferable to prove the reasonableness of such fees through the affidavit of the attorney doing the work, the Court can determine a reasonable fee upon consideration of all facts and circumstances presented by the record." *Hennessee v. Wood Group Enters., Inc.,* 816 S.W.2d 35, 37 (Tenn.App. 1991).

The Reeds filed a motion requesting an award of attorney's fees under the Act:

> While the attorney has a belief that he has more than fifty (50) hours of his time devoted to the file in the representation of Plaintiffs in the protection of their interest, he asked Plaintiffs to seek for him an award of $7,500.00 as an appropriate fee to be paid by Defendants to the Plaintiffs as their attorney fees.

The trial court awarded plaintiffs $5,000 in attorney's fees. We do not find this to be an unreasonable amount based upon the attorney's assertion that he spent more than fifty hours on the case. This issue is found adverse to the appellant.

B.

West Knox also challenges the chancellor's award of $2,018.10 in discretionary costs to the Reeds. Specifically, West Knox contests the award of $385.75 for the costs of court-ordered mediation.

"While reasonable and necessary costs in the

preparation and trial of a lawsuit may be assessed as discretionary costs under T.R.C.P. 54.04(2), the awarding of such costs is a discretionary matter with the trial court." *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 902 (Tenn. 1992).

Rule 54.04(2), Tenn.R.Civ.P., defines the discretionary costs which are allowable as

> reasonable and necessary court reporter
> expenses for depositions or trials,
> reasonable and necessary expert witness
> fees for depositions or trials, and
> guardian ad litem fees....

*Id.* We cannot say that the trial court abused its discretion in awarding discretionary costs for deposition expenses, court reporter expenses, and expert witness fees. While an award for the costs of mediation is not expressly authorized under Rule 54.04(2), we find that such an award is permitted under Section 7 of Rule 31 of the Rules of the Supreme Court:

> The costs of any alternative dispute resolution
> proceeding, including the costs of the services
> of the Rule 31 dispute resolution neutral, at
> the neutral's request, may be charged as court
> costs. The court may in its sound discretion
> waive or reduce costs of an alternative dispute
> resolution proceeding.

In the instant case, it appears that the "neutral" billed for his mediation services. This is the only reasonable explanation for the fact that the Reeds' attorney seeks

reimbursement for such a charge.  We find that billing by the neutral is tantamount to "the neutral's request" as set forth in Rule 31.

## C.

Finally, the Reeds contend that this case should be remanded for consideration of an additional award of attorney's fees incident to the defense of this appeal.  We do not find an award of fees on appeal to be appropriate in this case. Certainly, this appeal is not frivolous in nature.  *See* T.C.A. §  27-1-122 (1980).

VI.


The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the trial court for the enforcement of the judgment, and for collection of costs assessed below, all pursuant to applicable law.


_____
Charles D. Susano, Jr., J.


CONCUR:


_____
Houston M. Goddard, P.J.


_____
William H. Inman, Sr.J.