IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 16, 2003 Session

# KATHY GARDENHIRE, ET AL. v. REAL ESTATE INSPECTION SERVICE, INC., ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 95-1240      Frank V. Williams, III, Chancellor**

**FILED JANUARY 29, 2004**

**No. E2002-02214-COA-R3-CV**

---

Todd Gardenhire and his wife, Kathy Gardenhire ("the plaintiffs"), own a residence and lot on Signal Mountain. In 1995, they contracted with Real Estate Inspection Service, Inc. and Stephen Eady, doing business as Stephen Eady Company (collectively "the defendants"), for the construction of a sunroom addition, a swimming pool, and other work at their residence. Later that same year, the plaintiffs sued the defendants alleging that the defendants had failed to complete the work and that "much of the work" was not accomplished according to the parties' agreement. The defendants answered and filed a counterclaim seeking money allegedly due them for work performed in connection with the contract. Following a bench trial, the court awarded the plaintiffs $35,000 and dismissed the defendants' counterclaim. The defendants appeal. We affirm the judgment in part and reverse in part and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and WILLIAM H. INMAN, SR. J., joined.

George M. Derryberry, Chattanooga, Tennessee, for the appellants, Real Estate Inspection Service, Inc. and Stephen Eady dba Stephen Eady Company.

Ronald J. Berke, Chattanooga, Tennessee, for the appellees, Kathy Gardenhire and Todd Gardenhire.

**OPINION**

I.

On appeal, the defendants present the following issues for our review and resolution:

1. Does the evidence preponderate against the trial court's factual findings supporting its conclusions regarding the terms of the parties' contract?

2. Does the evidence preponderate against the trial court's factual findings pertaining to the defendants' alleged breaches of the parties' contract?

3. Does the evidence preponderate against the trial court's decision that the defendants are not entitled to relief on their counterclaim?

4. Does the evidence preponderate against the trial court's factual findings supporting its award of $35,000 to the plaintiffs?

## II.

As can be seen, these issues raise factual matters. Our review in such cases is *de novo* upon the record from the proceedings below. Tenn. R. App. P. 13(d). This case comes to us accompanied by a presumption that the trial court's factual findings are correct. **Id**. This is a presumption we must honor unless the evidence preponderates against the trial court's factual findings. **Id**.

## III.

Our initial focus is upon the first two issues raised by the defendant. As to those issues, the trial court made the following findings and reached the following conclusions:

> First, I am of the opinion that the parties agreed that the area outside the sun room was to be level after taking a step or two down from the door.
>
> *   *   *
>
> [Mr. Eady] also knew that the Gardenhires wanted a pool at ground level with no steps up. And these things are not – these details about the ground level and the lack of steps up to the pool and that sort of thing are not inconsistent with the written contract . . . .
>
> *   *   *
>
> The Court is convinced that the Gardenhires wanted and expressed to Mr. Eady that they wanted the pool at ground level, and Mr. Eady expressed his belief that this could be done, even given the knowledge of both sides about the possible problems with rock.

\*   \*   \*

. . . the exact elevation and final location of the pool was something that was going to have to be determined during the course of construction, and it was. And I think the parties reached an agreement on that.

\*   \*   \*

The drainage was understood by Mr. Eady to be away from the house. And I know this because it's shown on his drawing dated 9-26-95 which is Exhibit Number 11. And this was done in September when the pool was under construction to show that his understanding was that the dirt, the fill should slope away from the house so that the water did not drain towards the house. And this had to be understood in conjunction with the Gardenhires' expectation that this pool was not going to have steps up to it, that it was going to be constructed at ground level. And so the whole issue about the drainage situation is tied to the construction, the find [sic] location and elevation of the pool

\*   \*   \*

And so when Mr. Eady told Mrs. Gardenhire that she could stop excavation of rock and have only a three-inch rise in the pool from the ground level, this fixed the location and height above ground of the pool, and the subsequent failure to construct the pool to those specifications was the fault of Mr. Eady and not [of] the Gardenhires.

\*   \*   \*

. . . the location of the pool and the depth of the pool and the height of the pool was fixed as a part of the contract because the parties agreed on it then. And the failure at that point of Mr. Eady to know that he could build it to that point and it be only three inches high was his fault. He should have known what he was saying. The Gardenhires were faced with the prospect of having to spend a lot [of] money because they knew they had to pay for the excavation of that rock.

And for Mr. Eady to then complete the pool through the work of his subcontractor and tell the Gardenhires that it was going to be one foot – at least one foot too high was a breach of contract on the part of Mr.

-3-

Eady. This put the Gardenhires in what I think is an impossibl[e] position. And they faced a choice between two undesirable options: Either to build the steps up to the pool, which they thought was risky, or to slope the ground in such a way that the water ran back towards the house.

\* \* \*

Mrs. Gardenhire even gets back up on the witness stand and denies that Mr. Eady ever discussed with her that by [raising] the ground level and constructing it as it actually turned out, that the water would flow back up to against house.

\* \* \*

Mr. and Mrs. Gardenhire wrote back to [Mr. Eady] in which they repeated their contention that they had agreed to a rise of the pool in the amount of three inches in order not to incur more expense for the removal of rock. And Mrs. Gardenhire says I agreed to do this, but it was later that they came back to her and told her that it was going to be a foot high, and that she either had a choice of taking steps – a step wall across the length of the pool coming out of the sun room or she could raise the ground level so that the pool and deck would be fairly level with the entry of the sun room. And the contents of these letters are consistent with the testimony as I have . . . heard it today and would find essentially that that is exactly what happened.

We do not find it necessary or appropriate to recite the evidence – pro and con – on these two issues. Suffice it to say that there is an abundance of evidence to support the trial court's findings of fact as to (1) the parties' agreement and (2) the defendants' breaches. In any event, the issue for us is whether the evidence – when viewed in its totality – preponderates *against* the facts found by the trial court on these two matters. It clearly does not. Accordingly, we affirm the trial court's factual findings as to the parties' agreement, the defendants' breaches of that agreement, and the trial court's conclusion that the defendants are liable to the plaintiffs for the damages caused by those breaches.

IV.

The defendants argue that the trial court erred in dismissing their counterclaim. They argue that after deducting payments made to them by the plaintiffs and after crediting the contract price for those allowances pertaining to work not performed by them, there remains a balance due of $20,197.22. They ask us to modify the trial court's judgment so as to award them a set-off against the judgment awarded to the plaintiffs. We decline to do so.

"It is well settled that equitable set-off will not be allowed where it would work injustice." ***Fed. Sur. Co. v. Union Indem. Co***., 161 Tenn. 621, 624, 33 S.W.2d 421, 421 (1930). In the instant case, it is clear that the plaintiffs will never have precisely what they contracted for. At best, they will only have a condition "equivalent" to that for which they contracted. Furthermore, even to reach that stage of equivalency, the plaintiffs are once again going to have to go through the disruption that residential modification construction always brings. Equity militates against the allowance of a set-off.

The evidence does not preponderate against the trial court's decision to dismiss the counterclaim.

V.

As to the final issue – whether the evidence preponderates against the award of damages of $35,000 – our review of the record persuades us that, because of a paucity of evidence touching upon the cost of the repairs that the trial court found to be necessary, the evidence is incomplete on this critical subject. Accordingly, we conclude that the evidence presently before us does not justify an award of $35,000.

The evidence does not preponderate against the trial court's factual findings as to the repairs that will be necessary to correct the defendants' breaches of contract:

> And again, going to the Plaintiffs' claim for damages based on a diminution in value, I'm not impressed with the argument that that necessarily diminishes the value of their house or property. It seems to me that I have . . . got to come up with some figure here that will allow them to go out there and do some work of some sort that was going to alleviate what seemed to me to be some serious problems with regard to water under this house, water that is flowing down the hill, that is flowing across the ground, that is flowing into the crawl space below the sun room and is actually getting into a part of the house where it never was.
>
> *  *  *
>
> There is a problem with the installation of the sun roof because it's leaking, and there was a problem there.
>
> *  *  *
>
> I think the Plaintiffs are entitled to a judgment. I think they have some serious problems, and I think its going to require a good deal of work out there to fix it. The – it seems to me that at some point, and

-5-

of course they're going to decide this, but at some point they are going to give up this hope of being able to maintain the pool in the condition it's in without steps going up to it. It seems to me from the questions that [counsel for the defendants] asked of one of the witnesses, perhaps the Plaintiffs' expert, and the drawings that were made on the blackboard up here, that it is perfectly possible to construct a level patio, a level walk area out to the pool and put in some steps up to the pool, which again, is not going to be what the Gardenhires contracted for, but again, there is no way that I can see that it is reasonably possible save tearing out of the pool and removing more rock to give them what they contract for. And again, I think that's Mr. Eady's fault. I'm not necessarily blaming them. It's just that I don't think that it's reasonable at this point to award them what they claim to be the diminution in the value of they [sic] party when it seems to me the real task here is to come up with an amount that the Court finds reasonable to go out and make some corrections to the construction, especially with regard to the removal of dirt at the possible entry into the sun room, the removal of dirt or other measures taken in sun room to prevent water from collecting there, and other things that are going to take up a good built [sic] of time.

The trial court did not conclude, as did the plaintiffs, that the appropriate measure of damages, given the facts of this case, is the difference between (1) the value that their property would have had if the defendants had properly performed their contract and (2) the value of the property as "improved," albeit improperly, by the defendants. The trial court rejected this approach, concluding that the proper measure of damages in this case is the cost of repairing the improperly-performed work. Our review of the record convinces us that the facts of this case bring into play the measure of damages adopted by the trial court, as more fully developed in the next section of this opinion.

VI.

In *Edenfield v. Woodlawn Manor, Inc*., 62 Tenn. App. 280, 462 S.W.2d 237 (1970), the plaintiff contracted with the defendant for the construction and purchase of a residential condominium. 462 S.W.2d at 238. The plaintiff alleged, among other things, that the defendant breached its contract in that it failed to install the heating and air conditioning ducts in the unit in full compliance with the written specifications and engineering drawings. *Id*. at 239-40. Through the testimony of two witnesses, the plaintiff established "that the reasonable cost of removing the unacceptable ducts and installing ducts to meet the specification requirements would be $11,099." *Id*. at 240. The jury returned a verdict, approved by the trial court, for $12,464, including the testified-to repairs of $11,099. *Id*. at 239.

On appeal, the defendant in **Edenfield** argued that the proper measure of damages was "the difference between the value of the apartment as it was constructed by defendant's contractor and its value as reconstructed in accordance with the specifications." **Id**. at 240. The plaintiff countered by arguing that "the cost of reconstructing the air conditioning system so as to meet the specifications," **id**., was the proper measure of damages.

In affirming the trial court's judgment, the Court of Appeals quoted, with approval, 13 Am. Jur. 2d as "support[ing] plaintiff's insistence," **id**. at 241:

> The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent. What the equivalent is depends upon the circumstances of the case, among which is the consideration of whether the defect or omission is remediable without tearing down what has been done by the contractor and rebuilding.
>
> As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained.

**Id**. (quoting 13 Am. Jur. 2d *Building and Construction Contracts* § 79.

## VII.

In the instant case, the plaintiffs understandably focused on (1) monies they had paid to the defendants and (2) monies paid to others following the defendants' cessation of work on the project. In addition, each of the plaintiffs testified as to values in support of their theory that the defendants' breaches diminished the value of their property. The only evidence addressing the general subject of *future repairs* that would be necessary because of deficient construction on the part of the defendants was the testimony of an expert presented by the plaintiffs. He testified that a French drain to address the plaintiffs' water problem would cost approximately $6,000. Thus, we have very little evidence to support the cost-of-repairs measure of damages correctly found by the trial court to apply to the facts of this case.

While we agree with the defendants' argument that the evidence is not sufficient to support a damage award of $35,000, we cannot agree that this failure should result in a dismissal of the plaintiffs' complaint or a reduction of damages to the $6,000 figure. In view of the trial court's

finding of liability – a finding with which we wholeheartedly agree – we believe such a result would be patently unfair and unjust.

We hold that this case must be remanded to the trial court for a new trial, but only on the issue of damages. *See* Tenn. Code Ann. § 27-3-128 (2000). The parties have already had a full and fair hearing on the issue of liability and there is no reason to have a new trial on this issue. The breaches have been established by the trial court, and we affirm the trial court's holding as to these breaches. On remand, each side will be permitted to put on proof regarding the cost of performing the repairs that the trial court found would be necessary to place the property in an equivalent state to the one that would have existed had the defendant not breached the contract. The trial court will then be in a position to render judgment based on the evidence dealing with the necessary cost of repairs.

VIII.

The judgment of the trial court as to the liability of the defendants is affirmed. The portion of that judgment as to damages is reversed, and this case is remanded for a new trial, but solely on the issue of damages, pursuant to the instructions set forth in this opinion. Exercising our discretion, we tax the costs on appeal to the appellants, Real Estate Inspection Service, Inc. and Stephen Eady dba Stephen Eady Company.

_____
CHARLES D. SUSANO, JR., JUDGE