# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs, October 4, 2011

## FILMtech, Inc., v. CHARLIE McANALLY, d/b/a GRAINGER PAVING

**Appeal from the Chancery Court for Grainger County**
**No. 08120    Hon. Telford E. Forgety, Jr., Chancellor**

---

**No. E2011-00659-COA-R3-CV-FILED-DECEMBER 22, 2011**

---

Plaintiff brought this action against this contractor alleging breach of contract to construct an asphalt parking lot for plaintiff.  The Trial Court determined that defendant breached the contract and awarded damages.  On appeal, we affirm the Judgment of the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Scott A. Hodge, Morristown,  Tennessee, for the appellant, Charlie McAnally.

C. Dwaine Evans, Morristown, Tennessee, for the appellee, FILMtech, Inc.

### OPINION

This is an appeal from the Trial Court's judgment in favor of plaintiff FILMtech, Inc., upon a finding that defendant Charlie McAnally, d/b/a Grainger Paving (McAnally) breached its contract to construct an asphalt parking lot for plaintiff.

Plaintiff filed a Complaint in Chancery Court, alleging that McAnally had constructed a defective asphalt parking lot at plaintiff's industrial plant.  The Complaint stated causes of action for negligence, breach of contract and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*  In addition to an award of actual damages, plaintiff sought treble damages, attorney's fees and court costs pursuant to Tenn. Code Ann.

§ 47-18-109.

The Trial Court entered an order referring the matter to a Special Master to conduct a hearing to take proof on all issues and to report to the Court on all matters submitted to him, including findings of fact and conclusions of law pursuant to Tenn. R. Civ. P. 53. The matter was heard by the Special Master on May 10, 2010 and the Master issued his report June 5, 2010. The report summarized the Master's findings of facts and stated the Master found that the preponderance of the evidence showed that McAnally did not perform the contracted paving work in accordance with the specifications set forth in his estimate, thus McAnally breached the contract with plaintiff. The Master found that the breach of contract was the proximate cause of the damage to the pavement. Based on the testimony of plaintiff's expert engineer and another paving contractor, the Master found that the "best and possibly only solution" to plaintiff's problem with the parking lot was to remove it and build another lot in accordance with the specifications set forth in the original estimate. The other contractor provided an estimate of $48,620.00 for the demolition and reconstruction of the lot. Because plaintiff had used the McAnally-built lot for two years after it was completed, the Master recommended that the dollar amount of the judgment be reduced by 10% of the estimated replacement cost of $48,620.00, to $43,758.00. The Master arrived at the 10% reduction based on the expert engineer's reference to the lot as a "twenty-year" design. Thus, the Master reasoned that two years was 10% of the twenty-year life expectancy of the lot. Because the Master had found a breach of contract, he did not consider the negligence claim and he stated that the proof did not support a finding of a violation of the Tennessee Consumer Protection Act. Both parties filed objections to the Special Master's report with the Trial Court.

The Trial Court heard the matter on October 18, 2010 and entered a Final Judgment in favor of plaintiff the same day. The Judgment reflects that the Trial Court considered the Special Master's report, the parties objections to the report, the argument of counsel and the entire record before rendering judgment.

The Trial Court adopted and approved the Special Master's report in its entirety and awarded judgment in favor of plaintiff against McAnally in the amount of $43,758.00. Both parties were ordered to pay one-half of the Special Master's fees of $1,050.00.

McAnally filed a notice of appeal, and the issues presented for review are as follows:

A. Whether the Trial Court erred in approving the Special Master's report without conducting a proper review?

B. Whether the Trial Court erred in finding that appellant breached the contract?

C.      Whether the Trial Court erred in finding the alleged breach of contract as the proximate cause of damage to the pavement?

D.      Whether the Trial Court erred in awarding appellee $43,758.00 in damages?

The Trial Court's Order referring certain matters to the Special Master, the Special Master's Report, and the Trial Court's Order adopting the findings and conclusions of the Special Master in its entirety as the basis for its final judgment affect our standard of review on appeal. A concurrent finding by a Special Master and a Trial Court is conclusive on appeal, except where the finding is on an issue not proper to be referred to a Special Master, where it is based on an error of law or a mixed question of fact and law, or where a factual finding is not supported by any material evidence. *Manis v. Manis*, 49 S.W.3d 295, 301 (Tenn. Ct. App. 2001)(citing *Long v. Long,* 957 S.W.2d 825, 828 (Tenn. Ct. App.1997); *Aussenberg v. Kramer,* 944 S.W.2d 367, 370 (Tenn. Ct. App.1996); *Archer v. Archer,* 907 S.W.2d 412, 415 (Tenn. Ct. App.1995); Tenn. Code Ann. § 27-1-113.

Appellant questions whether the Trial Court conducted a review of the Special Master's findings and conclusions before approving and adopting the Special Master's report as a basis for its judgment in favor of FILMtech. Tenn. R. Civ. P. 53 provides a trial court with the authority to appoint a special master by order of reference and Rule 53.04(1) requires the special master to prepare "a report upon the matters submitted by the order of reference and, if required to make findings of fact and conclusions of law, the master shall set them forth in the report." Rule 53.04(2) provides that the trial court, in a non-jury action, will conduct a hearing after the special master's report is provided and the parties have had an opportunity to submit objections to the report to the court. After the hearing, the court may adopt the report, may modify it or may reject it in whole or in part or may receive further evidence or recommit with instructions.

This Court, in *In re Estate of Cook*, M2008-00325-COA-R3-CV, 2009 WL 3255250 (Tenn. Ct. App. M.S. Oct. 9, 2009), discussed the importance of a trial court's review of a special master's report and the record upon which the special master relied in reaching the findings and conclusions contained in the report. The Court of Appeals stated that "even though issues may be referred to a special master, the "trial court retains its judicial power to make the ultimate determination of the issues in the case." *Id*. at *4 (citing *Franklin v. DeKleinFranklin,* No. E2007-00577-COA-R3-CV, 2008 WL 1901113, at *8 (Tenn. Ct. App. Apr.30, 2008)). Further, once objections to the master's report have been filed by the parties, "it is incumbent upon the Trial Judge to review the evidence and any exhibits and if he disagrees with the findings of the Master, to make independent findings." *Id*. at * 5 (citing *Mumford v. Mumford,* No. E2002-01338-COA-R3-CV, 2004 WL 483213, at *4 (Tenn. Ct. App. Mar.12, 2004)). The *Cook* Court concluded that the trial court "cannot abdicate to the

master its responsibility to make a decision on the issue in question, and it "must do more than 'rubber stamp' what the master has done." *Id*. (citing *Lakes Prop. Owners Ass'n, Inc. v. Tollison,* No. 03A01-9402-CV-00038, 1994 WL 534480, at *3 (Tenn. Ct .App. E.S. Oct. 4, 1994)). "The judgment is to be that of the trial court, and not the master." *Id.*

In this case the Trial Court made it clear in its Judgment that it had considered the "Special Master's Report, Objections to Special Master Report filed by Plaintiff, Response to said Objections filed by Defendant, argument of counsel, and the **entire record**" (emphasis added) before approving and adopting the Special Master's report. Moreover, this issue was not raised in the Trial Court and is without merit.

There is material evidence in the record to support the finding that Mr. McAnally breached the contract and that the breach of the contract was the cause of the failure of the pavement. It is undisputed that McAnally agreed to construct plaintiff's parking lot according to specifications. Reid Beebe, a Registered Professional Engineer employed by S & ME as a project manager, an engineering consulting firm located in Knoxville, testified before the Master regarding the results of his tests. McAnally only testified that in one part of the parking lot, near the loading dock, he could not put in six inches of base stone because there was rock already present at that spot. He did not dispute that the base stone was less than six inches in the other locations tested by Beebe's measurements which also showed the asphalt as being less than three inches, other than by saying that he was sure the equipment he used to apply the asphalt was set to produce a three inch level. However, he did not produce any evidence to demonstrate that the asphalt was actually applied to met the three inch specification he had agreed to provide. Thus, the only testing of the pavement after it began to fail was performed by Mr. Beebe, and the results of those tests clearly showed that all but one of the sites tested did not have the required thickness of base stone and asphalt.

A contractor's failure to comply with the agreed upon specifications of a construction contract is a breach of that contract. This Court, in *Jessee's Estate v. White*, 633 S.W.2d 767 (Tenn. Ct. App. 1982) discussed this issue. There, a suit was brought against a paving contractor for breach of the paving contract, and this Court held that the contractor's failure to comply with the specifications was a material breach of contract. *Id*. at 768 (citing *Sullivan County v. Ruth & Co.*, 106 Tenn. 85, 59 S.W. 138 (1900); *Edenfield v. Woodlawn Manor, Inc.*, 62 Tenn.App. 280, 462 S.W.2d 237 (1970); *East Lake Lbr. Box Co. v. Simpson*, 5 Tenn.App. 51 (1927). *Cf. Perkins Oil Co. v. Eberhart*, 107 Tenn. 409, 64 S.W. 760 (1901)). There is material evidence in the record that McAnally did not meet the specifications of the contract when he constructed the parking lot. Thus, he breached the contract.

Appellant contends that even if there was a breach of contract due to not meeting the

-4-

thickness specifications for the base stone and asphalt layers of the pavement, the breach was not the cause of the pavement failure. However, there is material evidence in the record that supports a finding that the failure to build the parking lot to specifications caused the failure. Mr. Beebe testified that it was his opinion to a reasonable degree of engineering certainty that the failures in the parking lot were caused by a "combination of the thickness of the asphalt and the base stone not meeting the intended thickness." In addition to the evidence presented by Beebe, a Mr. Sellers, an experienced pavement contractor with industrial experience, also testified that in his opinion the parking lot would not have failed, even if forklifts were driven over it, had it been constructed as specified in McAnally's estimate.

Appellant attempts to show that Mr. Beebe also attributed the failures to heavy traffic and water migrating into the subsoil. However, Mr. Beebe's testimony was actually that these potential contributing factors would be secondary to the factor of inadequate thickness of the base stone and asphalt. Accordingly, there was material evidence offered by Beebe and Sellers that the breach of the contract was the cause of the pavement failure.

McAnally contends that the amount of damages of $43,758.00 awarded to plaintiff was excessive as it was more than the cost of the original contract. There was material evidence in the record that failures in the pavement would continue to occur unless the parking lot was removed and rebuilt according to the original specifications. Sellers testified that the cost for him to remove the existing failed asphalt and install new base stone and asphalt as per the original specifications would be $48,620.00. Defendant offered no evidence as to the cost of repair. Because there is material evidence in the record to support the finding that the damage sustained by the plaintiff was the cost of removal and replacement of the parking lot and there was material evidence to support the cost of the work, accordingly, the Trial Court did not err in awarding plaintiff $43,758.00 in damages. Plaintiff did not appeal the Trial Court's reduction in damages from Mr. Seller's estimate of $48,620.00 to $43,758.00 which was based on the finding that the useful life of the parking lot was twenty years and that it had been used by plaintiff for two years at the time of trial.

There was material evidence presented to support the Special Master's and the Trial Court's finding that appellant breached the construction contract and that the breach was the proximate cause of the parking lot's failure. Moreover, there was material evidence presented to support the award of damages. Accordingly, the Judgment of the Trial Court is affirmed. The cause is remanded, with the cost of the appeal assessed to Charlie McAnally.

_____
HERSCHEL PICKENS FRANKS, P.J.